**Kenneth BORDEN, Plaintiff,**

v.

**BANACOM MANUFACTURING AND MARKETING, INC.; Epson America, Inc.; Pelikan, Inc.; Printronix Anadex, Inc., Defendants.**

**Civ. A. No. 3–86–0435–H.**

United States District Court, N.D. Texas, Dallas Division.

July 18, 1988.

Joe K. Crews, Law Offices of James Barber, Dallas, Tex., for Borden.

Madeleine B. Johnson, Thompson & Knight, Dallas, Tex., for Printronix.

E. Russell Nunnally, Alan B. Rich, Johnson & Swanson, Dallas, Tex., for Epson.

William D. Sims, Jr., Karl Dial, Jenkens & Gilchrist, Dallas, Tex. and Daniel C. Kaufman, Ely Ritts Brickfield & Betts, Washington, D.C., for Pelikan.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Before the Court is the Motion to Enforce Settlement Agreement, brought by Defendants Epson America, Inc. ("Epson"), Pelikan, Inc. ("Pelikan"), and Printronix Anadex, Inc. ("Printronix"), filed on June 13, 1988; Plaintiff's Response to Defendants' Motion to Enforce Settlement Agreement, filed June 24, 1988; and Defendants' Reply Brief in Support of Motion to Enforce Settlement Agreement, filed July 7, 1988. Movants seek the enforcement of a settlement agreement embodied in an August 14, 1987 letter from Eric Eisenbraun, Esq. (then counsel for defendant Banacom Manufacturing and Marketing, Inc. ("Banacom") to Joe Crews, Esq. (counsel for Mr. Borden).

Plaintiff brought this action against Defendants for alleged misrepresentations made in the solicitation and sale of a franchising agreement. The franchising agreement concerned a computer graphics signwriting system. The case was removed from state court in February of 1986 and in April of that year, Counsel filed a joint status report, requesting a January 1987 trial, with this Court.

In 1987, parties began or continued settlement negotiations. On August 14, 1987, this Court received a telephone call from Mr. Crews who informed the Court that a settlement had been reached.

Mr. Eisenbraun sent out a preliminary draft of the "Settlement Agreement" on August 21, 1987. In a responding letter dated August 31, Mr. Crews proposed five minor changes to the draft and informed opposing Counsel that Mr. Borden would refuse to return a laminating machine worth approximately $2,500.00. Argument concerning the machine seems to have continued throughout September. Then, during the week of October 5, 1987, Mr. Eisenbraun informed parties that because of cash flow problems, Banacom would be unable to meet the monetary commitment it had made in the Settlement Agreement. The Court received notification of this fact in Counsels' letter to the Court dated October 15, 1987.

Following a pretrial conference of May 19, 1988, the Court ordered the Entry of Default against Banacom on June 17, 1988. The Court now considers Movants' request for enforcement of the Settlement Agreement.

A federal court has the inherent power to enforce an agreement entered into in settlement of litigation.[1] *Lee v. Hunt*, 631 F.2d 1171, 1173–74 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed. 2d 112 (1981). Construction and enforcement of settlement agreements, however, is governed by the principles of the state law generally applicable to contracts. Because the Agreement at issue here was negotiated and is to be performed in Texas, the law of Texas determines its enforceability. *Hunt v. Coastal States Gas Producing Co.*, 583 S.W.2d 322, 325 (Tex.1979), *cert. denied*, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979). More specifically, the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11, Texas Rules of Civil Procedure ("Texas Rule 11"). *Anderegg v. High Standard, Inc.*, 825 F.2d 77, 80–81 (5th Cir.1987); *Condit Chem. & Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102–03 (5th Cir.1986).

Texas Rule 11 provides that "[n]o agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex.R.Civ.P. 11. Thus, the question facing this Court is whether the Borden Agreement satisfies those requirements.

■ Movants argue that the August 14 letter from Mr. Eisenbraun to Mr. Crews, signed by both attorneys,[2] contains the ma-terial provisions of the Agreement. Those provisions are also embodied in the preliminary draft of the "Settlement Agreement", sent to all counsel of record with a letter dated August 21, 1987, and specifically referred to in counsels' letter to the Court dated October 15, 1987.

Plaintiff argues persuasively that neither the August 14 letter nor the preliminary draft of the "Settlement Agreement" were finalized statements of settlement. The material settlement provisions concerning Plaintiff and Movants, embodied in the above two documents, however, were not subject to further negotiation.[3] Moreover, Texas courts will recognize not only a formal, finalized statement of settlement but also "its reduction to writing and signature, *or their substantial equivalents:* dictation into the record by all the parties sought to be bound." *Anderegg*, 825 F.2d at 81 (emphasis added). This Court concludes, as explained below, that the Borden Agreement constitutes the "substantial equivalent" of a written, signed settlement.

In *Anderegg*, the Court noted "that agreements between lawyers respecting the handling and disposition of cases are inherently vexed matters, akin to those governed by the Parol Evidence Rule and the Statute of Frauds." *Anderegg*, 825 F.2d at 80. For a contract to meet the requirements of the Statute of Frauds, it must furnish within itself or by reference to other identified writings then in existence the terms of the contract. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex.1983) (contract for sale of land) (citing *Jones v. Kelley*, 614 S.W.2d 95, 99 (Tex.1981)). *See*

---

1. The Court notes that where no material facts concerning the existence of an agreement are in dispute, the entry of an order without a plenary hearing is permissible. *Lee v. Hunt*, 631 F.2d 1171, 1177 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981). In a letter to the Court dated October 15, 1987, Mr. Eisenbraun and Mr. Crews wrote, "the parties reached agreement that they believed was a full and final settlement resolution of this action. The agreement was reduced to writing by counsel for Banacom, Mr. Eisenbraun." While counsel for Pelikan, Printronix and Epson were not signatories on that October 15 letter, they reaffirmed their commitment to the Agreement at the status conference of May 19, 1988.

2. The Court acknowledges the notation made by Mr. Crews that his signature, assenting to the letter provisions, was "subject to final approval by client." The Court notes, though, that in his letter to the Court dated January 29, 1987, signed by Mr. Borden, Mr. Crews assured the Court, "Mr. Borden and I have reached agreement on strategic and settlement issues as discussed at the pretrial conference. With his signature, Mr. Borden indicates that he has authorized me to proceed with this case on his behalf."

3. In their October 15, 1988 letter to the Court, Counsel state that "There has never been any disagreement among the parties about the amount of money."

*also Hegar v. Tucker,* 274 S.W.2d 752 (Tex. Civ.App.—Galveston 1955, writ ref'd n.r.e.) (mere reference to future formal contract in writing does not negative the existence of a present contract). This Court finds that the collective writings of August 14, August 21, and October 15, 1987 serve to satisfy the writing requirement of Texas Rule 11.

■ Plaintiff also argues against enforcement of the Agreement on the grounds that it was not signed by any of the Movants.[4] The transcript of the May 19, 1988 conference before the Court clearly evidences Defendants' reaffirmation of the Borden Settlement Agreement. The Court finds that such open court adoption of a settlement, embodied in written documents, constitutes the substantial equivalent of the Texas Rule 11 requirement of a signature.[5]

In its interpretation of Texas Rule 11, the Texas Supreme Court stated:

> Our holding that Rule 11 means precisely what it says, should not be interpreted as requiring "slavish adherence" to the literal language of the rule in all cases ... The reason for Rule 11 is clear. As already observed, oral agreements concerning suits "are very liable to be misconstrued or forgotten, and to beget misunderstandings and controversies."

*Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984) (citing *Sone v. Braunig,* 469 S.W.2d 605, 611 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.) and *Bridwell v. Cox,* 18 Tex. 535, 537 (1857)). Because the Borden Agreement has been reduced to a writing (or its substantial equivalent), and affirmed by counsel representing the parties, the Court finds that the Defendants' Motion is well taken and it is, therefore, GRANTED.

The Court orders that Printronix, Epson, and Pelikan each pay $5,000.00 to Plaintiff on or before noon, July 28, 1988. Following such payment, the Court will dismiss with prejudice Plaintiff's claims against these defendants and all counterclaims of these Defendants. The Settlement Agreement between Plaintiff and Defendants Epson, Pelikan, and Printronix, embodied in the writings of August 14, August 21, and October 15, 1987 will be enforced as an order of the Court.

SO ORDERED.

---

4. Movants explain that Banacom's counsel coordinated the exchange of communications during the settlement negotiations as Movants were, in Plaintiff's words, "only minor contributors to the settlement fund."

5. *E.g., Dehnert v. Dehnert,* 705 S.W.2d 849, 850 (Tex.App.—Beaumont 1986, no writ) (court enforced settlement agreement even though parties never actually signed written settlement agreement; *attorney's note in another writing that "P.S.—Buddy: Everything Else looks as agreed"* satisfied rule).