914 F.2d 258
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PUREX CORPORATION, et al., Plaintiffs-Appellants,
v.
WILLIS DAY PROPERTIES, INC., et al., Defendants-Appellees.
 No. 89-4032.
 United States Court of Appeals, Sixth Circuit.
 Sept. 11, 1990.
 
 Before KENNEDY, BOGGS and SUHRHEINRICH, Circuit Judges.
 
 
 1
 SUHRHEINRICH, Circuit Judge. This case involves the district court's construction and enforcement of the terms of an oral settlement agreement entered into between the parties on the eve of trial. The underlying litigation arose out of a fire causing property damage to a warehouse and its contents. After conducting an evidentiary hearing on the terms of the settlement agreement, the district court held that the appellants, who owned goods that were destroyed in the warehouse, released "all claims" against the appellees, the warehouse owner and manager. Appellants raise three arguments on appeal. First, appellants contend that the district court relinquished its jurisdiction when, after being informed by the parties that an oral settlement agreement had been reached, the court sua sponte entered an order dismissing the case. Second, appellants argue that their attorneys lacked the requisite authority to enter into a settlement agreement under the terms found to exist by the district court. Third, appellants claim that the district court's findings of fact concerning the terms of the settlement agreement were clearly erroneous. For the reasons stated below, we affirm the district court's order enforcing the oral settlement agreement.
 
 I.
 
 2
 On July 7, 1985, a fire destroyed a warehouse, owned by Willis Day Properties, Inc. ("Willis Day") and managed by Able Warehousing & Development Company ("Able"), and the goods contained therein, some of which were owned by Purex Corporation. On the date of the fire, Purex Corporation was wholly owned by, and is now merged with, the named co-plaintiff, Dial Corporation. Plaintiffs Purex Corporation and Dial Corporation (hereinafter collectively referred to as "Purex") sued Willis Day and Able for damages to the goods and for clean-up expenses, allegedly in excess of 4.3 million dollars. Able counterclaimed for the clean-up expenses it incurred, which were allegedly in excess of $10,000.00. Purex has received $3,861,211.00 from its insurer, Underwriters at Lloyds ("Lloyds").[1] Willis Day's insurer, Industrial Risk Insurers ("IRI"), has filed a separate suit against Purex for the cost of damages to the real property ("IRI Litigation").
 
 
 3
 On December 6, 1988, one day before the scheduled trial, the attorneys for the respective parties conferred and reached an oral settlement agreement. On December 7, 1988, after being informed that the case had been settled, the district court judge dismissed the case without prejudice and simultaneously granted the parties leave to file settlement stipulations. No settlement stipulations were ever filed. After several months of failed attempts to reduce the agreement to writing, Purex and Able filed cross-motions for judgments to enforce each party's version of the December 6, 1988 settlement agreement. Based upon findings of fact made at a July 21, 1989 evidentiary hearing, the district court ordered Purex to release "all claims" against Willis Day and Able. A clarification of the court's initial order stated that Purex could not pursue contribution or indemnity claims in any pending or future litigation, including but not limited to the IRI litigation, arising from the warehouse fire. Purex now appeals from the order and clarification entered by the district court.
 
 II. DISCUSSION
 A. Jurisdiction
 
 4
 Purex's initial argument on appeal is that the district court relinquished its jurisdiction when it dismissed the case sua sponte without prejudice, on December 7, 1988. The district court's order reads as follows:
 
 
 5
 Upon consideration, the court having been informed that the above entitled cause of action has been settled between the parties, it is ordered that the docket for this case be marked 'settled and dismissed without prejudice'. Counsel granted leave to file additional settlement stipulations.
 
 
 6
 The narrow issue presented is whether this is a "conditional" or an "unconditional" dismissal order as entered by the district court.
 
 
 7
 It is well settled that "courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862 (1976); All States Investors, Inc., v. Bankers Bond Co., 343 F.2d 618, 624 (6th Cir.) 1, cert. denied, 382 U.S. 830, reh'g denied, 382 U.S. 922 (1965). Further, no specific language is necessary to effect a "conditional" as opposed to an "unconditional" dismissal: "[A]ll that is necessary is that it be possible to infer that [the trial judge] did intend to retain jurisdiction--that he did not dismiss the case outright, thereby relinquishing jurisdiction." McCall-Bey v. Franzen, 777 F.2d 1178, 1188 (7th Cir.1985).
 
 
 8
 A plain reading of the district court's dismissal order indicates that it fully intended to retain jurisdiction over this matter until settlement stipulations were filed by the parties. It is also worth noting that the parties, including Purex, construed the dismissal as "conditional" as evidenced by the motions for enforcement that were filed with the district court approximately four months subsequent to the district court's dismissal order.
 
 
 9
 Purex's reliance on our decision in Hinsdale v. Farmers Nat'l Bank & Trust Co., 823 F.2d 993 (6th Cir.1987) is misplaced. The Hinsdale decision turned on the jurisdictional impact of a concededly "unconditional" dismissal entered by the district court. Id. at 995. Furthermore, the parties in Hinsdale had already signed a settlement stipulation, pursuant to Fed.R.Civ.P. 41(a)(1), at the time of the dismissal. Id. In this case, by contrast, the district court specifically granted the parties leave to file such settlement stipulations at the time of the dismissal.
 
 
 10
 B. Purex's Attorney's Settlement AuthorityPurex claims that the December 6, 1988 settlement agreement cannot be enforced because the attorneys representing Purex lacked the requisite express authority to enter into such an agreement.[2] To support this contention, Purex argues that its attorneys were never expressly authorized to settle the litigation under the terms as found to exist by the district court. However, we find nothing in the record which indicates that Purex raised the issue of its attorney's authority to settle this lawsuit in the lower court. There are no facts, nor is there any ruling by the district court, from which this Court can properly review Purex's contention that its attorneys overreached their settlement authority. Accordingly, we hold that Purex did not properly preserve this issue for appeal. Bailey v. Chattem, Inc., 684 F.2d 386 (6th Cir.1982).[3]
 
 C. Terms Of The Settlement Agreement
 
 11
 Purex and Able each filed motions for judgments to enforce the oral settlement agreement. Purex now claims that the terms of the agreement, as decided by the district court, do not reflect the actual agreement reached between the parties. Under Purex's version of the disputed terms, Purex would receive $650,000.00 in return for dismissing the instant lawsuit. Purex would then be able to file a cross-claim for contribution and/or indemnity against Willis Day and Able in the IRI and any other litigation arising out of the fire. Under Willis Day's and Able's version of the disputed terms, which the district court ultimately adopted, Purex would be prevented from seeking contribution or indemnity from Willis Day or Able in any action filed by a third party against Purex for damages resulting from the fire.
 
 
 12
 The standard for review concerning factual disputes in cases such as this is well settled: "Although [the appellate court] may freely review the district court's legal conclusions concerning the existence of an enforceable oral contract, its subsidiary factual determinations must be upheld unless they are clearly erroneous." (footnote omitted). Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 143 (6th Cir.1983). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, reh'g denied, 333 U.S. 869 (1948).
 
 
 13
 At the evidentiary hearing conducted by the district court on July 21, 1989, testimony was introduced from eight attorneys involved in the underlying litigation, seven of whom were present at the settlement conference. Exhibits were offered into evidence and closing arguments were made to the court. The district court specifically found that the testimony of Purex's attorney, Mr. Jellinek, was not convincing. Other attorneys testified that by "release" the parties intended that Willis Day and Able would be completely removed from all litigation concerning the warehouse fire. After a careful review of the record and, specifically, the testimony of the attorneys introduced at the evidentiary hearing, we hold that the district judge's findings of fact were not clearly erroneous.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Although not a named party in the litigation below, Lloyds attempted to intervene in this appeal, designating itself as a "plaintiff-appellee". Because the Federal Rules of Appellate Procedure do not provide for intervention by a non-party at the appellate level, this Court is left no choice but to refuse intervention and decline consideration of Lloyds' brief
 
 
 [2]
 Purex also argues that one of the attorneys who negotiated the settlement, Mr. Jellinek, represented Purex's insurance carrier, Lloyds, but did not represent Purex. However, attorneys Jellinek and Ellenburger participated in the action as counsel for the plaintiffs for the initial 15 months of this lawsuit; and this fact is evidenced by their listing on all pleadings as counsel for plaintiffs, Purex and Dial. There was no indication at any critical time during the proceedings before the district court that Jellinek represented Lloyds and not Purex. In fact, Lloyds has never been a named party to this lawsuit
 
 
 [3]
 In any event, Purex relies on several Ohio cases that discuss the authority of an attorney to make binding agreements on behalf of his client in the context of real estate transactions. See Morr v. Crouch, 19 Ohio St.2d 24, 249 N.E.2d 780 (1969); Ottawa County Comm'rs v. Mitchell, 17 Ohio App.3d 208, 478 N.E.2d 1024 (1984). While these cases apparently require that an attorney have "express" authority to act on behalf of his client in conveying real property, it is less clear whether the more rigorous agency principles found in real estate transactions apply equally to other areas of the attorney-client relationship. See Argo Plastics Products Co. v. City of Cleveland, 15 Ohio St.3d 389, 474 N.E.2d 328, 331 (1984) (if an attorney exceeds his authority or enters into an agreement against the wishes of his client, the client's remedy lies in an action for malpractice, not in an appeal to set aside an otherwise valid settlement agreement); Weir v. Needham, 26 Ohio App.3d 36, 498 N.E.2d 175 (1985); Miller v. Wick Bldg. Co., 154 Ohio St. 93, 93 N.E.2d 467 (1950)