**BAMERILEASE CAPITAL CORP.,**
**Plaintiff–Appellee,**

v.

**Eugene E. NEARBURG, Defendant–**
**Appellant.**

No. 90–3452.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1991.

Decided March 3, 1992.

Rehearing Denied April 23, 1992.

Marilyn Shea-Stonum (briefed), William D. Manson (argued), Jones, Day, Reavis & Pogue, Cleveland, Ohio, for plaintiff-appellee.

Richard L. Jackson, Dallas, Tex. (argued and briefed), for defendant-appellant.

Before JONES and NELSON, Circuit Judges, and MILES, Senior District Judge.[*]

---

* The Honorable Wendell A. Miles, Senior District Judge for the Western District of Michigan, sitting by designation.

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Eugene E. Nearburg appeals the district court's order enforcing a settlement agreement and awarding plaintiff-appellee Bamerilease Capital Corporation attorney's fees in this contract dispute. For the following reasons, we affirm the district court.

I

This case was originally filed in the United States District Court for the Northern District of Texas by Bamerilease Capital Corporation in November of 1985. Subsequent to the filing of this case, Bamerilease Capital Corporation changed its name to BA Leasing & Capital Corporation ("BA"). The case was filed against GEX Hardy, Inc., GEX Kentucky, Inc., General Exploration Corporation, and Holmes Land Company (collectively, "GEX Companies"), and Eugene E. Nearburg, the companies' chief executive officer and the largest single stockholder of the parent company. The suit alleged various breaches of contract and various types of tortious conduct by all of the defendants. On April 16, 1986, several months after the filing of the complaint, the four GEX Companies filed bankruptcy petitions, causing the case to be stayed with respect to them. The claims against the GEX Companies have been resolved in the Chapter 11 cases.

In January 1989, this case was transferred to the United States District Court for the Northern District of Ohio pursuant to BA's motion to transfer. On October 20, 1989, the district court set a November 6, 1989 trial date for this case. Later, the trial date was changed to November 8, 1989. Thereafter, the parties began negotiations in an attempt to settle the case. A meeting to this end was held in Dallas, Texas, on November 3, 1989. Different settlement approaches were discussed at the November 3 meeting, and by the end of the day a "tentative" settlement agreement had been reached. On November 6, 1989, BA's counsel sent Nearburg and his counsel a letter outlining her understanding of the structure and terms of the agreement reached on November 3, 1989.

On November 7, 1989, the court received three letters. Letter number one was a letter to Judge Manos from BA's counsel. It stated that a "tentative" settlement agreement between Bamerilease and Nearburg had been reached on November 3, 1989, and outlined the agreement. Letter number two was a letter from Nearburg's counsel to BA's counsel stating that "[w]e are in agreement with the structure of the settlement as outlined in your letter of November 6, 1989, to Judge Manos with the following substituted language." J.A. at 44. This letter was signed by Nearburg. Finally, letter number three was from Nearburg's counsel to BA's counsel, stating that "I enclose a copy of a Fax [telecopy] letter which Mr. Nearburg and I have signed to evidence the agreement. I think you can represent to the Court that the matter is finally concluded." J.A. at 46.

After delivering these letters to the court, BA's counsel commenced drafting the documentation in support of the settlement agreement. On November 14, 1989, BA's counsel sent Nearburg's counsel a draft of the settlement agreement. On November 15, 1989, Nearburg voiced general dissatisfaction with the draft. The remainder of November 15 and the following day were devoted to negotiating the parties' differences.

On November 17, 1989, the parties again met in Dallas, Texas, to affix their signatures to the final draft, which Nearburg refused to sign. Nearburg refused to honor the terms of the alleged settlement agreement, and BA filed a motion to enforce the settlement agreement. A full evidentiary hearing was conducted on this motion, and on April 16, 1990, the court entered judgment in favor of BA. This appeal followed.

The issues raised on appeal are: (1) whether the district court erred in failing to apply state law in ruling upon the enforceability of the settlement agreement; (2) whether the district court's proceedings violated Nearburg's right to due process by not affording him a full trial; (3) whether the district court's judgment violates the Full Faith and Credit Clause, the Due

Process Clause, or both; (4) whether the district court's findings are supported by the record; (5) whether the district court erred in awarding attorneys' fees; and finally, (6) whether the district court erred in granting BA's motion to substitute parties.

II

The first and primary issue in this appeal is whether the district court erred in failing to apply state law when ruling upon the enforceability of the alleged settlement agreement. For the reasons discussed below, we think the district court erred in failing to look to the appropriate state law.

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir.1988). Settlement agreements are a type of contract and are therefore governed by contract law. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 487 (6th Cir.1973). Thus, "[w]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir.1986); *see also Lockette v. Greyhound Lines*, 817 F.2d 1182, 1185 (5th Cir.1987) ("In this case, where jurisdiction is based upon diversity of citizenship, we will apply the substantive law of Louisiana to determine whether the settlement agreement allegedly entered into ... is enforceable."); *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir.1985) ("The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law."). This is distinguishable from the question of "[w]hether a settlement agreement, ... tested under state law, has been accepted by a federal court and properly incorporated into a valid and enforceable judgment [, which] is purely a matter of federal procedure." *White Farm*, 792 F.2d at 529.

The primary question on appeal is whether Nearburg entered into a settlement agreement, which is a question of contract law. Hence, it was incumbent upon the lower court to "apply the choice of law rules of the forum state." *Lee v. Hunt*, 631 F.2d 1171, 1174 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981). Therefore, we conclude that the district court erred in failing to look to state law when determining the enforceability of the settlement agreement.

III

Although the district court's failure to apply Ohio law to this problem was error, we find that applying the correct law produces the same result. Ohio's choice of law rules direct us to apply *lex loci* —the law of the place of the contract's making— to determine the validity or enforceability of a contract. *Arsham v. Banci*, 511 F.2d 1108, 1114 (6th Cir.1975). The district court found that the settlement agreement was negotiated and made on November 3, 1989 in Texas. J.A. at 40–41, 49. Thus, Texas law governs the enforceability of this settlement agreement.

Nearburg claims that Texas law would invalidate the agreement between the parties, because he never signed the final documents. "[T]he enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the provisions of Rule 11, Texas Rules of Civil Procedure." *Borden v. Banacom Mfg. and Marketing, Inc.*, 698 F.Supp. 121, 123 (N.D.Tex.1988). Rule 11 provides in relevant part that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record...." *Id.* (quoting Tex. R.Civ.P. 11).

Although at first blush this rule may seem to support the claims of the appellant, the Texas courts have not so interpreted it. The Texas courts do not insist upon a literal interpretation of the language, so long as the reason for Rule 11's existence is not overlooked: the rule is an attempt to prevent the "misunderstandings and controversies" that oral agreements sometimes generate. *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex.1984) (quoting *Birdwell v. Cox*, 18 Tex. 535, 537 (1857); *see also Bor-*

*den,* 698 F.Supp. at 124 (letter setting out a draft of a previously reached settlement agreement, where the court had been informed that the parties had agreed on a settlement, found to be the "substantial equivalent" of a signed, written agreement); *Anderegg v. High Standard, Inc.,* 825 F.2d 77, 81 (5th Cir.1987), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988) (Texas courts will recognize formally written and signed statements of settlement or their substantial equivalents.). As the Texas Court of Appeals has interpreted it, "the purpose of requiring that agreements either be in writing or entered of record is that it avoids the untenable situation of the trial judge having to place each attorney on the stand to determine which one is telling the truth." *Fidelity & Casualty Co. of New York v. McCollum,* 656 S.W.2d 527, 528 (Tex.Ct. App.1983). Such confusion is not a problem here. In the instant case, the parties exchanged letters, sending copies of most of them to the district court as well, in which they outlined in writing the settlement agreement made on November 3. These letters represented that an agreement had been reached, and it was on this ground that the district court removed their case from the docket. Two of these letters were signed by Nearburg himself; these and the rest were signed by his attorney. Therefore, we find that under Texas law, the parties made a valid, enforceable settlement agreement. Because this result is the same as that reached by the district court applying federal law, we hold that its error in choice of law was harmless, and we affirm the district court, not in its reasoning, but in its result.

## IV

■ Nearburg next contends that the district court proceedings violated his rights to due process by not affording him a full trial. We disagree.

Nearburg requested a full trial before the district court on the issue of "the existence and enforceability of the purported settlement agreement, and objected to anything short of a full trial." Br. of Appellant at 11. The district court denied this request. The district court did, however, conduct several conferences on the issue and held an evidentiary hearing, allowing the parties to present evidence and witnesses on their behalf.

"This court has held that courts have the power to summarily enforce settlement agreements, though an evidentiary hearing should be held when a substantial factual dispute exists." *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir.) *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). In the present case, a substantial factual dispute existed with respect to the entry into a settlement agreement. *See Kukla v. National Distillers Prods. Co.,* 483 F.2d 619, 621–22 (6th Cir. 1973) (entry into agreement is substantial dispute requiring evidentiary hearing). The trial court held a properly conducted evidentiary hearing, affording both parties the opportunity to be heard. Thus, the trial court did what was required of it and appellant's complaint here is without merit.

## V

■ Nearburg also challenges the district court's grant of BA's motion to substitute parties. We find no error on the part of the district court here.

Federal Rule of Civil Procedure 25(c) provides in part: "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Bamerilease Capital Corporation was the original named plaintiff in this case. Subsequent to the filing of this action, however, Bamerilease changed its name to BA Leasing & Capital Corporation. On March 26, 1990, the court granted plaintiff's motion to substitute BA for Bamerilease Capital Corporation, pursuant to Fed. R.Civ.P. 25(c).

Nearburg contends that because the substitution did not occur until after the date of the alleged settlement, BA Leasing & Capital Corporation must prove that it

owns the cause of action asserted in this suit. We disagree.

The matter of substitutions due to a transfer of interest is within the discretion of the district court. *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir. 1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). Nearburg has not shown that the district court abused its discretion in granting the motion for substitution. Therefore, we find that the district court used its discretionary powers properly.

## VI

Nearburg raises three other issues in his brief: (1) that the district court's judgment violates the Full Faith and Credit Clause or the Due Process Clause of the United States Constitution; (2) that the district court's findings were not supported by the record; and (3) that the district court erred in awarding attorneys' fees to the appellee as sanctions. After fully considering these issues upon briefs and oral argument, we find that they do not merit further discussion.

## VII

For the foregoing reasons, we AFFIRM the judgment of the district court.

DAVID A. NELSON, Circuit Judge, concurring.

I agree that the judgment of the district court ought to be affirmed, and I agree with Judge Jones' analysis of Texas law. The same result would obtain, in my view, under federal law.

I am uncertain whether the enforceability of the settlement agreement is dependent on state law or federal law. Diversity cases do sometimes present questions for which federal principles provide the rule of decision—see *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 n. 4 (6th Cir.1982), a diversity case where federal law was applied in deciding a judicial estoppel question—and this court has repeatedly said, as did the district court in the case at bar, that federal trial courts possess inherent power to enforce settlement agreements entered into by litigants in cases pending before them. See, for example, *Kukla v. National Distillers Products Co.,* 483 F.2d 619 (6th Cir.1973), and *Purex Corp. v. Willis Day Properties, Inc.* (unpublished), 914 F.2d 258 (table), full text available at 1990 WL 130481, 1990 U.S.APP.LEXIS 16038 (6th Cir.1990), both of which were diversity cases. Whether federal trial courts exercising diversity jurisdiction have any inherent power to enforce settlement agreements that would not be enforceable under state law is an interesting question, but I would leave its resolution to another day; the issue is not presented by the case before us.