**Harriett Wilma OLIVER**

v.

**THE KROGER CO.**

Civ. A. No. 3–93–CV–2209–D.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 9, 1994.

Mark Frederick Huffman, Menaker & Huffman, Dallas, TX, for plaintiff.

Steven Randolph McCown, Michael Scott McDonald, Littler, Mendelson, Fastiff, Tichy & Mathiason, Dallas, TX, for defendant.

### FINDINGS, CONCLUSIONS AND REC-OMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE *

BOYLE, United States Magistrate Judge.

Pursuant to the District Court's Order of Reference filed October 4, 1994, came on to be heard October 26, 1994, **Defendant The Kroger Co.'s Motion to Stay and Motion for Enforcement of Settlement Agreement,** ("Kroger's Motion to Enforce"), filed October 3, 1994. For the reasons that follow, the undersigned recommends that the motion be **GRANTED.**

* Editor's Note: District judge's adopting order follows.

In its motion, Kroger seeks to enforce a settlement agreement entered into by the parties in this case in July, 1994. The issue before the Court is whether the parties' settlement agreement should be enforced in the face of plaintiff's claims that there was no meeting of the minds as to certain material terms of the agreement, and that a change in her physical condition entitles her to relief from the settlement agreement. As discussed below, Rule 11 of the Texas Rules of Civil Procedure governs this agreement and supports its enforcement.

This is a personal injury action. Plaintiff brings this suit alleging that after 29 years employment for Kroger she has developed severe bronchial and respiratory symptoms due to continuous exposure to chemical fumes produced by defendant's meat wrapping equipment. (Pl's. First Am.Comp.) The case was removed to federal district court on November 10, 1993. (Am. Notice of Removal filed Nov. 10, 1993.)

The events underlying Kroger's Motion to Enforce Settlement began in July, 1994. It is undisputed that in mid-July, 1994, the parties entered into a settlement agreement whereby the defendant agreed to pay plaintiff $25,000 plus court costs, in exchange for a release of all claims and a dismissal of the pending litigation with prejudice. Following their agreement defendant's counsel left a message on the District Court's court-coordinator's answering machine relating to the court that settlement had been reached. The agreement was confirmed in writing by a letter sent to plaintiff's counsel on July 14, 1994. (Def's. Ex. 1).[1] The July 14, 1994, letter was signed by counsel for both sides.

On July 18, 1994, plaintiff's counsel sent defendant's counsel a letter reflecting the taxable court costs expected to be paid as part of the settlement. (Def's. Ex. 2). Defendant's counsel then drafted the settlement check. (Def's. Ex. 3). The remaining settlement documentation was exchanged between counsel and approved by plaintiff's counsel. When the remaining documentation was sent to plaintiff Oliver for signature, problems with the settlement began to arise.

On or about September 2, 1994, defendant was informed by plaintiff's counsel that plaintiff no longer agreed to the settlement. Defendant sent a demand letter to plaintiff on September 7, 1994. In a letter dated September 8, 1994, the District Court was advised of the dispute regarding the settlement and a copy of the July 14, 1994, letter was tendered to the Court with a request that it be filed with the Court as a matter of record. (Kroger's Motion to Enforce, Ex. E). Between September 8, 1994, and September 26, 1994, plaintiff twice changed her mind about the settlement agreement, first deciding to accept the settlement, and later again rejecting the settlement offer. The foregoing facts are undisputed and it is upon these facts that the defendant argues that the settlement should be enforced.

Plaintiff contends, on the other hand, that she did not realize until she saw the final settlement papers that her heirs would be foreclosed from any claims against Kroger. She also contends that her condition has worsened since the time of the settlement and because of this she is entitled to a larger settlement than previously agreed upon.

■ Whether plaintiff or defendant should prevail in this settlement dispute is governed by Texas law. Questions regarding the enforceability of settlement agreements in diversity cases are governed by state law. *Borden v. Banacom Mfg. and Marketing, Inc.,* 698 F.Supp. 121, 123 (N.D.Tex.1988). And because the settlement at issue was negotiated and to be performed in Texas it is Texas law, specifically Rule 11 of the Texas Rules of Civil Procedure, which governs this analysis. *Id.* citing *Anderegg v. High Standard, Inc.,* 825 F.2d 77, 80–81 (5th Cir.1987); *Condit Chem. & Grain Co. v. Helena Chem. Corp.,* 789 F.2d 1101, 1102–03 (5th Cir.1986).

■ Rule 11 of the Texas Rules of Civil Procedure provides in pertinent part:

Unless otherwise provided in these rules, no agreement between attorneys or parties

---

1. Unless otherwise indicated, all exhibits refer to exhibits at the hearing held on Kroger's Motion to Enforce Settlement on October 26, 1994.

touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Rule 11 has been called a minimum requirement for enforcement of all agreements concerning pending suits. *Kennedy v. Hyde,* 682 S.W.2d 525, 528 (Tex.1984). Texas courts have applied the rule to settlement agreements. *Id.* at 528 citing *Williams v. Hollingsworth,* 568 S.W.2d 130, 131 (Tex. 1978); *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292 (Tex.1976). Although contract principles are generally applicable to settlement agreements, Texas courts have held that contract law cannot be applied to enforce an agreement that does not comply with Rule 11. *Padilla v. LaFrance,* 875 S.W.2d 730, 734 (Tex.App.—Houston [14th Dist.] 1994, no writ).

■ Having determined that Rule 11 applies to this dispute, it must next be decided whether the settlement agreement in question complies with Rule 11. In starting that analysis, it is important to note that although Rule 11 compliance is necessary to enforce a settlement agreement, "slavish adherence to the literal language of the Rule is not required in all cases." *Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984).

■ Rule 11 offers two alternatives for creating an enforceable agreement, the agreement must either be 1) in writing, signed and filed with the papers as part of the record or; 2) made in open court and entered of record. The agreement in this case, if enforceable at all under Rule 11, falls under the first alternative. There is little question that the second alternative, "made in open court and entered of record", was not complied with by the parties. To the extent defendant is contending that its message on the court-coordinator's answering machine regarding the settlement agreement complies with the "made in open court" alternative, it has offered no support for this position.

Moreover, the statutory terms of Rule 11 suggest otherwise, requiring that the agreement be "made in open court and entered of record." See *Jones v. American Motorists, Ins. Co.,* 769 S.W.2d 617 (Tex.App.—Houston [14th Dist.] (1989). (Parties announcement of settlement to court in pretrial conference with no corresponding court entry insufficient to meet "open court" requirement of Rule 11)." Having determined that the parties' agreement in this case does not comply with Rule 11's "open court" provision, the Court turns to Rule 11's alternative provision regarding written agreements.

■ Rule 11's first provision allows enforcement of an agreement, in writing, signed and filed with the papers as part of the record. The July 14, 1994, letter which embodies the general terms of the settlement agreement is a writing signed by both attorneys. This letter is not a finalized settlement agreement and release. However, the letter did set forth the material portions of the parties' agreement which required the defendants to pay plaintiff $25,000 in return for her release of all claims with prejudice. (Def.'s. Ex. 1). These material provisions were "not subject to further negotiation."[2] *Borden,* 698 F.Supp. at 123. Although the July 14, 1994, letter does not constitute the final settlement agreement between the parties, courts interpreting Rule 11's written agreement provision have not imposed such a requirement. Rather, relying upon the purpose behind Rule 11, these courts have found the "substantial equivalent to a written settlement agreement to be sufficient." *Borden,* 698 F.Supp. at 123, citing *Anderegg,* 825 F.2d at 81. Because the written agreement in this case contains the material provisions of the settlement agreement between the parties, it constitutes the "substantial equivalent" of a signed written settlement agreement, and for that reason, complies with Rule 11. That finding, however, does not end the inquiry. Rule 11's written agree-

---

2. Plaintiff now argues that, although she had agreed to the general terms of the agreement, she did not realize that she would be foreclosing any future claims by her heirs in the event something should happen to her due to these injuries. However, her attorney, Mr. Mark Huffman, stat-

ed at the hearing on Kroger's Motion to Enforce, that he had full authority to enter into a settlement agreement for plaintiff, and that his understanding at the time of the settlement agreement was that all future claims against Kroger would be foreclosed.

ment provision requires that the writing be filed with the papers as part of the record.

Defendant contends that in a letter dated September 8, 1994, the July 14, 1994, the settlement letter was sent to the court with the request that it be made part of the record in the case. (Kroger's Motion to Enforce, at 2 Ex. E). Defendant's Exhibit E to its Motion to Enforce supports this position, however, there is no indication that the settlement letter was made a part of the record. In its Motion to Enforce, filed October 3, 1994, Kroger did supply a copy of the July 14, 1994, letter agreement. This agreement is now a part of the record. Relying upon Texas courts' holdings that Rule 11 should not be interpreted to require "slavish adherence" to the literal language of the Rule in all cases, the undersigned finds that the October 3, 1994, filing of the July 14, 1994, letter as part of the exhibits for the Motion to Enforce sufficiently complies with Rule 11's "part of the record" requirement. See *Jones,* 769 S.W.2d at 618, 619 **(where the court indicated that a settlement agreement attached as an exhibit to a Motion for Summary Judgment sufficiently complied with "filed with the papers as part of the record" requirement.)**

■ In sum, although the parties' agreement is not in technical compliance with Rule 11, the policy behind the rule supports a finding that the July 14, 1994, letter agreement in this case should be enforced. The original purpose for the rule was to avoid the uncertainty and misunderstandings which characterize oral agreements between counsel regarding the disposition of cases. *Kennedy,* 682 S.W.2d at 526, 527, citing *Birdwell v. Cox,* 18 Tex. 535, 537 (1957). "Agreements of counsel in the course of a judicial proceeding which affect the interests of their clients should not be left to the fallibility of human recollection." *Id.* at 530 citing *Wyss v. Bookman,* 235 S.W. 567, 569 (Tex.Comm'n.App. 1921, holding approved). None of these concerns plague the settlement agreement at issue in this case. There is no indication that

at the time of the agreement there was any misunderstanding as to the material terms of the agreement. As mentioned previously,[3] plaintiff's only argument in this regard is that she did not realize she would be foreclosing her heirs from further suit against Kroger and this argument cannot stand. Rather, based on her counsel's statements at the hearing on the motion to enforce, he had full settlement authority at the time he entered into the agreement, and he fully intended to agree that all future claims would be waived by virtue of this settlement. An attorney's authority is based on agency principles. *Webb v. Webb,* 602 S.W.2d 127, 129 (Tex.App. Austin [3rd Dist.] 1980, no writ). Every reasonable presumption is to be indulged in favor of an attorney duly employed. *Id.*

The undisputed facts in this case support a finding that the parties entered into a written agreement to settle this case which was thereafter filed of record. Given these facts and the public policy interests which favor the settlement of lawsuits, absent some exception, this agreement should be enforced. *Kennedy,* 682 S.W.2d at 530. Exceptions to the rule are addressed below.

■ There are well recognized exceptions to Rule 11. *Kennedy,* 682 S.W.2d at 529. These exceptions include agreements in compliance with the rule but otherwise subject to attack due to fraud or mistake. *Id.* citing *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951). Plaintiff contends that two exceptions apply to the enforcement of this agreement. First, there was no meeting of the minds, and secondly, that her condition has deteriorated since the signing of the settlement agreement, resulting in a unilateral mistake on her part warranting relief from the agreement. Each of these arguments are addressed in turn below.

■ Plaintiff's first argument for setting aside the settlement agreement regards meeting of the minds.[4] A valid contract re-

---

**3.** See Footnote No. 2.

**4.** The "meeting of the minds" requirement for a valid contract has been described as an "often deceptive metaphor." *Laserage Technology v.*

*Laserage Laboratories,* 972 F.2d 799, 802 (7th Cir.1992), citing Farnsworth, *Contracts* § 3.6 at 118 (recommending that the "much abused metaphor" be abandoned).

quires a meeting of the minds and the determination of whether minds have met and whether a valid offer and acceptance have occurred is based on objective standards. *Fuqua v. Fuqua,* 750 S.W.2d 238, 245 (Tex. App.—Dallas 1988, writ denied). "The meaning reasonably conveyed by the parties' actions and words, rather than their uncommunicated subjective intentions, controls whether a contract has been formed." *Id.* citing *Slade v. Phelps,* 446 S.W.2d 931 (Tex. Civ.App.—Tyler 1969, no writ) (other citations omitted). The parties subjective state of mind is not relevant to the determination. *Adams v. Petrade Intern., Inc.,* 754 S.W.2d 696 (Tex.App.—Houston [1st Dist.] 1988, no writ).[5]

▮ Turning to the objective facts surrounding the settlement agreement in this case results in a determination that there was a meeting of the minds to settle the action and to preclude all future claims. At the time of the agreement, plaintiff had been under treatment by a doctor since early 1993 for the "meat wrapper's asthma" condition which is the basis for her lawsuit. Based on her testimony at the evidentiary hearing on Kroger's motion to enforce, her primary complaint that her condition has worsened is that she has been spitting up blood. However, the evidence showed that this is a condition she originally complained about to Kroger in early 1993. (Def.'s Ex. 5). At the time the parties negotiated the settlement agreement, based on the testimony at the evidentiary hearing, both sides were well aware of the meat wrapper's asthma diagnosis and the plaintiff's symptoms. Based on this knowledge the parties agreed that Ms. Oliver would receive $25,000 for her injuries and in exchange Ms. Oliver would drop her claims. These actions, reviewed by objective standards, indicate that the parties intended to foreclose all future suits. Moreover, based on her attorney's statement at the evidentiary hearing that he had full settlement authority and intended to waive all future claims, it is objectively reasonable to assume that he intended to foreclose all

claims regardless of her future condition. For these reasons, based on the objective standard that guides us under Texas contract law, plaintiff's claim that there was no meeting of the minds fails.

▮ Plaintiff's second argument for setting aside the settlement agreement is based upon the theory of unilateral mistake. The general rule in Texas is that a unilateral mistake is insufficient to set aside a contract unless the mistake is induced by acts of the other party. *Interfirst Bank of Abilene v. Lull Manufacturing,* 778 F.2d 228, 232 (5th Cir.1985); *Torchia v. Aetna Casualty and Surety Company,* 804 S.W.2d 219, 224 (Tex. App.—El Paso 1991, writ denied). An exception to the general rule is provided when: 1) the mistake is of so great a consequence to make enforcement of the contract unconscionable; 2) the mistake relates to a material element of the contract; and 3) the mistake is made regardless of the exercise of ordinary care. *Interfirst Bank of Abilene,* 778 F.2d at 232 citing *James T. Taylor & Son, Inc. v. Arlington Independent School Dist.,* 335 S.W.2d 371, 160 Tex. 617 (1960). In this case, plaintiff's "mistake" is apparently that she did not anticipate that her condition would deteriorate as she contends it has. However, the facts do not support setting aside the settlement agreement for this reason. First, the exercise of ordinary care would have revealed to plaintiff that her condition could worsen. Plaintiff has been under treatment since early 1993 for the same condition of which she now complains. The exercise of ordinary care contemplates that she would have discussed with her physician the likelihood that her condition could deteriorate. Further, plaintiff has not shown that her "mistake" is of such "great consequence" that enforcement of the contract would be unconscionable. It is not entirely clear that her condition has substantially worsened. Her doctor, Dr. Malabanan, did testify at the hearing that her condition had worsened since the signing of the settlement agreement. However, plaintiff's primary complaint of change in condition is spitting up

---

5. Although not controlling, the Seventh Circuit has described the intent determination by stating that "intent does not invite a tour through [one party's] cranium with [that party] as the guide." *Laserage,* 972 F.2d at 802.

blood which, based on the evidence, was a condition she complained of in 1993 when she initially reported this injury to Kroger. For these reasons, she has failed to allege an exception to the general rule which precludes relief for unilateral mistake.

## CONCLUSION

In conclusion, the undersigned finds that the settlement agreement at issue in this case complies with Rule 11 of the Texas Rules of Civil Procedure. The undersigned further finds that the plaintiff has failed to establish that any exception warrants setting aside the agreement. For these reasons, it is **RECOMMENDED** that Kroger's Motion to Enforce be **GRANTED.**

Signed this 17th day of Nov., 1994.

## ORDER

FITZWATER, District Judge.

After making an independent review of the pleadings, files and records in this case, and the Findings, Conclusions and Recommendation of the United States Magistrate Judge, I am of the opinion that the Findings and Conclusions of the Magistrate Judge are correct and they are adopted as the Findings and Conclusions of the Court.

ENTERED this 9th day of December, 1994.