NOT FOR FULL-TEXT PUBLICATION
File Name: 09a0531n.06

NO. 07-4281

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 31, 2009**

LEONARD GREEN, Clerk

DORIS E. NEELY,

       **Plaintiff-Appellant,**

v.

**GOOD SAMARITAN HOSPITAL,**

       **Defendant-Appellee.**

_____/

**ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO**

**BEFORE:  MARTIN, SUHRHEINRICH, and GIBBONS, Circuit Judges.**

**PER CURIAM.**  Doris Neely ("Neely") appeals from an order of the district court granting Good Samaritan Hospital ("Good Samaritan")'s motion to enforce a settlement agreement executed pursuant to a mediation.  The district court found that the parties had not bargained for the right to revoke at mediation and, accordingly, ordered the parties to execute the settlement agreement with its revocation clause excised.  For the reasons that follow, we **REVERSE** and **REMAND** for further proceedings.

**I.  Background**

On March 20, 2002, Neely filed a complaint in district court alleging, *inter alia*, a claim for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, and state-law claims for harassment, hostile work environment, and retaliation against her employer, Good Samaritan.  However, Neely never complained of age discrimination.  Upon Good

Samaritan's motion for summary judgment, the district court dismissed all claims except Neely's race discrimination claim. The district court scheduled a trial on that claim for March 7, 2005.

On March 3, 2005, the district court referred Neely's case for mediation before a magistrate judge. The following day, the magistrate judge conducted a three-hour mediation, which resulted in an agreement to settle the case. The essential terms of the settlement were placed on the record in open court by the magistrate judge:

> First, "The agreement of the parties is that the defendant will pay the plaintiff the sum of _____.[1] That will be paid by way of a check directly to Ms. Neely . . . ."

> "The second provision of the settlement agreement will be that the terms and conditions of the settlement agreement will be absolutely confidential for both parties."

> Finally, "The plaintiff will execute a general release. And it's understood that the plaintiff intends to continue her employment at Good Samaritan Hospital."

On March 7, 2005, the parties reported to the district court that they had settled. That same day, the district court entered an order dismissing the case with prejudice but expressly retaining jurisdiction to enforce the terms of settlement between the parties if necessary.

Per the parties' agreement, Good Samaritan subsequently drafted the written "Settlement Agreement and Release." The Settlement Agreement and Release contained three provisions relevant to the issue presently before this Court.

*First*, the written agreement contained the following language of release ("paragraph 2") (emphases added):

> 2. Employee, for herself, her heirs, personal representatives, successors and assigns, does hereby release and forever discharge the Hospital, its parent and affiliated

---

[1]The parties agreed to keep the amount of the settlement payment confidential. The amount has not been disclosed to this Court.

corporations and all of their past, present and future officers, directors, agents, employees, shareholders and attorneys (the "Released Parties") of and from *any and all* manner of action or actions, cause or causes of action, suits, debts, covenants, contracts, agreements, judgments, executions, claims and demands whatsoever in law or equity, whether known or unknown, which she now has or may have against the Released Parties for or by reason of any transaction, matter, cause or thing whatsoever to the date of this Agreement, whether based on tort, contract, express or implied, or any federal, state, or local law, statute or regulation including but not limited to claims based on the Family and Medical Leave Act, the Americans With Disabilities Act, *the Age Discrimination in Employment Act, the Older Workers Benefits Protections Act*, Title VII of the Civil Rights Act of 1964, Ohio Revised Code Chapter 4112, common law and any and all other claims which have arisen out of Employee's employment with the hospital.

*Second*, the written agreement contained the following paragraph, which allows Neely time

to consider and revoke the agreement ("paragraph 9") (emphasis added):

9. This Agreement was first delivered by e-mail to Employee's legal counsel on March 9, 2005. The parties agree that Employee shall have twenty-one (21) days within which to consider whether she wishes to enter into this Agreement. *This Agreement shall not become effective or enforceable for seven (7) days after Employee signs the Agreement, and during this seven (7) day period Employee may revoke this Agreement at her sole discretion.* Written notice of any revocation by Employee must be hand delivered to the Hospital's counsel, Karen T. Dunlevey, on the effective date of revocation. Employee acknowledges that, if this Agreement is executed prior to the expiration of the twenty-one (21) day period, it was Employee's free and voluntary act.

The parties do not dispute that this right to revoke was not discussed at mediation. As explained in its brief to this Court, Good Samaritan added paragraph 9 so that the Settlement Agreement would comply with the terms of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. To make a claim under the ADEA, the employee must be at least 40 years old. *Id.* § 631(a). Because Neely is over 40, Good Samaritan sought to protect itself from any age claims by adding the timing provision and other language based upon the provisions of the Older Worker Benefit Protection Act, 29 U.S.C. §§ 626(f)(1)(F)(1)-(2). Those provisions provide, in part, that an

-3-

employee waiving a claim for age discrimination in a written agreement must do so knowingly and voluntarily, after having been given a period of at least 21 days to consider the agreement, and further provide that the agreement must include a provision allowing the employee to rescind the agreement for a period of at least 7 days following execution of the agreement. *See* 29 U.S.C. § 262(f)(2).

*Third*, the settlement agreement contained the following merger clause ("paragraph 13"):

13. This Agreement and the representations contained in this Agreement constitute the entire understanding and agreement between the parties hereto.

Like the revocation clause, the merger clause was not discussed at mediation and was never placed into the record by the magistrate judge.

On March 29, 2005, Neely signed the Settlement Agreement. On April 4, 2005, however, Neely had a "change of heart" and notified counsel for Good Samaritan that "[a]fter much consideration, [she] has chosen to rescind the Settlement Release." Neely then informed the district court that the settlement was not consummated, and the district court vacated its prior dismissal.

More than two years later, on June 13, 2007, Good Samaritan filed a Motion to Enforce Settlement. On September 14, 2007, the district court held an evidentiary hearing on Good Samaritan's motion. At the hearing, counsel for Good Samaritan asked Neely if she agreed to a settlement at the March 2005 mediation, to which Neely replied, "Yes, I did." Counsel for Good Samaritan also asked Neely if there was "anything in that written agreement that is different from what was agreed to during mediation." Neely answered that she did not see anything that was different but explained that she understood paragraph 9 as giving her a "right" to rescind.

-4-

Jeffrey Walker, corporate counsel for Good Samaritan, also testified. He stated that the settlement document did not contain anything different from the terms agreed upon during the mediation. On cross examination, Walker was asked about paragraph 9 and whether it indicated a right to revoke the agreement. Walker answered that it did offer that right. Walker further testified that, as drafted, the right to revoke under paragraph 9 was not limited to age discrimination claims. Neither party testified about the merger clause.

Good Samaritan, in closing remarks, stressed that the parties had agreed to a general release at mediation and that paragraph 9 was added because that language was required for a valid release of age claims. Neely argued that "paragraph 9 does not have any limit. . . . To argue after the fact that this is something out of statute that is required would even be perhaps permissible if, in fact, her sole claim was an age claim and if there was language basically describing and depicting this age claim [in paragraph 9]."

The district court noted that both parties agreed to a general release at mediation. The court asked counsel for both parties, "Since your argument is that the Plaintiff agreed to the settlement and since the hang-up appears to be this paragraph, would you consider accepting the settlement as agreed to and not pushing for both a general release and a release specific to age claims?" Good Samaritan agreed to the compromise. Neely expressed "a slight disagreement."

Ultimately, the district court concluded that, to its satisfaction, the parties agreed to a general release at mediation. Further, the magistrate judge had not placed anything on the record indicating the parties bargained for a revocation clause. The court explained that paragraph 9 added language to the settlement agreement that was consistent with the specific release of certain claims but was not typically part of a general release: "Paragraph 9 is something that in this Court's opinion is not

standard in a general release. It either ought not to be there or, if it's there, it ought to indicate the specific type of claim to which it refers or it should be referenced on the record at the time of the settlement." Therefore, in the court's opinion, enforcing the settlement without the revocation clause was a fair disposition that gave the parties what they bargained for.

On September 19, 2007, the district court entered an order granting Good Samaritan's motion and directing Neely to sign the Settlement Agreement with paragraph 9 excised. Neely timely appeals from the district court's judgment.

## II. Analysis

### A. Standard of Review

Neither party disputes that they reached an agreement to settle at the close of mediation on March 4, 2005, and that the terms of the settlement were placed into the record in open court. Neely asserts that the Settlement Agreement and Release, which she executed on March 29, 2005, reflected what the parties agreed to during the mediation and that she has abided by the terms of the written settlement agreement in exercising her right to rescind. Good Samaritan argues that the district court properly excised the revocation clause from the settlement agreement because the settlement reached on March 4, 2005, was not revocable and the parties had never bargained for the right to rescind, which Good Samaritan itself included in the writing.

A settlement agreement is a type of contract and is therefore governed by contract law. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). "Questions of contract interpretation are generally considered questions of law subject to *de novo* review." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996). "[W]e review the district court's decision to grant a motion to enforce the settlement . . . for abuse of discretion," after reviewing "for clear error

the district court's factual determination that the parties had agreed to settlement terms." *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001).

## B. Neely Properly Revoked The Settlement Agreement

We believe that resolution of this issue turns on whether the parties contemplated the "general release" to be effective against only those claims in Neely's 2002 complaint or against any and all claims Neely may have had up to the point they agreed to settle the case. If the parties agreed only to release those claims in Neely's complaint, then Good Samaritan has the winning argument because Neely had, in fact, never bargained for the right to revoke and, accordingly, Neely improperly revoked a valid agreement. If, however, the parties agreed to generally release all claims Neely may have had, and not just those in her 2002 complaint, then Good Samaritan was required by federal law to add the revocation clause for the agreement to be effective against an age discrimination claim, and Neely properly exercised her right to revoke under the written terms of the agreement.

Our interpretation of the language the magistrate judge placed on the record–that "plaintiff will execute a general release"–is that Neely would forego any and all claims she may have had–not just those contained in Neely's complaint. Our belief is bolstered by Good Samaritan's position taken in oral argument, where Good Samaritan explained that it wanted the release to be "as broad as possible." Good Samaritan takes the same position throughout its brief to this Court that the written agreement it drafted, which includes the broad general release language of paragraph 2, memorialized the terms of settlement agreed to during the mediation and placed on the record in open court. (*See, e.g.*, Good Sam. Br. 4.) Neely does not argue otherwise. (*See, e.g.*, Neely Br. 4-5.)

Having established that the parties agreed to a general release of any and all claims Neely may have had, we now consider whether the terms of the written agreement accurately reflect that agreement. Neither party argues that the essential terms of the settlement agreement did not mirror what was discussed at mediation and placed on the record. Neely, for example, contends that the "true and final settlement agreement" was the written document, which by virtue of its merger clause, fairly represented and incorporated the terms reached at mediation. (Neely Br. 20.) Similarly, Good Samaritan asserts that it "drafted a proposed written settlement agreement, which it believed accurately reflected the terms of the settlement." (Good Sam. Br. 14.) Therefore, we find no dispute that the essential terms of the agreement reached at mediation are found in the written agreement.

We next determine whether the terms of the agreement, and especially the right to revoke in paragraph 9, were correctly carried out. The plain language of paragraph 2, which Good Samaritan drafted, unmistakably conveys that the parties agreed to generally release *any and all* manner of action or actions, whether known or unknown to Neely, including, *inter alia*, "the Age Discrimination in Employment Act" and "the Older Workers Benefits Protections Act." The *only* way for Good Samaritan's written release to be effective *as a general release* was if Good Samaritan included the ADEA's revocation language. *See* 29 U.S.C. § 626(f). Contrary to Good Samaritan's argument (Good Sam. Br. 7), the right to revoke need not be bargained for. Indeed, it is required by law. *See* § 626(f)(2)(a). Because Neely must be given the statutory right to revoke, Neely must also be given the opportunity to exercise that right. The record demonstrates that she has properly exercised that right.

Construing the plain language of the parties' written agreement underscores our conclusion that Neely validly revoked the agreement. First, the merger clause in paragraph 13 explains that the representations contained within the written agreement "constitute the entire understanding and agreement between the parties hereto." Thus, in executing the settlement agreement, the parties intended that the essential terms of their agreement were fully represented therein. Indeed, as this Court has explained,

> Merger clauses are routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated. A completely integrated agreement must be interpreted on its face, and thus the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations or of side agreements in a proceeding in which a court interprets the document.

*Security Watch, Inc v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999). The district court erred, then, by stripping the unambiguous revocation language from the settlement agreement based solely upon Good Samaritan's argument that the revocation language it drafted was not intended to be effective.[2]

Second, as Neely argues in her brief, the district court's solution is problematic because without paragraph 9 and its timings provisions, the settlement agreement is ineffective as to age claims and, accordingly, no longer a general release of *all* claims.[3] (Neely Br. 11.) Leaving that

---

[2]To be sure, under the ADEA, Neely may not waive an age claim in a written agreement without a revocation clause as part of the terms. 29 U.S.C. § 626(f). Perhaps a better solution would have been for the district court to have ordered the enforcement of the settlement agreement with the revocation clause operable as to *only* age claims. However, that avenue is also blocked by Good Samaritan's decision to include the merger clause in the written agreement.

[3]When construing contracts, we read the contract so as to give meaning and effect to all its provisions. *Diversified Energy, Inc. v. Tenn. Valley Auth.*, 223 F.3d 328, 339 (6th Cir. 2000). Without paragraph 9, much of the remaining language relating to the general release of *all*

potential claim open for litigation was never part of the parties' agreement at the mediation. To the contrary, as Good Samaritan argues, the whole reason paragraph 9 was added was to avoid having to defend against an age claim.

Finally, under settled principles of contract interpretation, Good Samaritan is bound by paragraph 9 and Neely's rightful revocation. The plain language of paragraph 9 provides that the "Agreement shall not become effective or enforceable for seven (7) days after [Neely] signs the Agreement, and during this seven (7) day period[, Neely] may revoke this Agreement at her sole discretion." When interpreting contractual language, "a contract is to be construed against the party who drew it." *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996); *Neely v. Miller Brewing*, 25 F. App'x 370, 372 (6th Cir. 2002); Restatement (Second) of Contracts § 206 (1981) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). As conveyed in its brief, Good Samaritan "had a legitimate reason" to contemplate an age claim as part of the "general release" and, therefore, Good Samaritan included the revocation clause as protection against such a claim. It strains logic, then, for Good Samaritan to add the unconditional right to revoke into a settlement agreement but to disallow Neely from exercising that right as promised under the terms of the agreement and as required under the ADEA.

### III.  Conclusion

---

claims, especially the provision releasing "claims based on . . . the Age Discrimination in Employment Act" in paragraph 2, is superfluous. The way Good Samaritan has drafted it, the general release referenced throughout the settlement agreement is only effective when it is supported by the timing provisions in paragraph 9.

Neely has exercised her valid right to revoke as contained in the written agreement, thereby voiding the settlement. We therefore **REVERSE** the decision of the district court with instructions on **REMAND** to rescind the settlement agreement.