**Lisa LOCKETTE, et al., Plaintiffs,**

**Pamela Lockette,**

**Plaintiff-Appellant,**

v.

**GREYHOUND LINES, INC.,**

**Defendant-Appellee.**

No. 86–4650.

United States Court of Appeals,
Fifth Circuit.

May 29, 1987.

Daniel G. Guidry, Glenda M. August, Guidry & Guidry, Martinville, La., for plaintiff-appellant.

Lisa J. Miley, New Orleans, La., George A. Wheat, Phoenix, Ariz., McGlinchey, Stafford, Mintz, Cellini & Lang, Frederick R. Campbell, New Orleans, La., for defendant-appellee.

Before RANDALL, GARWOOD and DAVIS, Circuit Judges.

PER CURIAM:

Pamela Lockette appeals the district court's enforcement of a settlement agreement between Lockette and Greyhound Lines, Inc. Because we conclude that whatever authority Lockette's attorney had to enter into a binding settlement agreement was revoked by Lockette prior to the consumation of settlement, we reverse.

I.

On October 28, 1984, Pamela Lockette and her sister, Lisa Lockette, were passengers on a Greyhound Bus that was involved in a collision near Mobile, Alabama. Initially, Lockette hired Ted Haik and Leon Minvielle to prosecute her claims against Greyhound. Lockette later discharged Messrs. Haik and Minvielle and retained Walter J. Rippas as her counsel. Rippas, in turn, retained Kenneth DeJean to handle the case in an arrangement by which DeJean would not communicate directly with Lockette, but instead would deal with Lockette only through Rippas.

Rippas testified that Lockette had given him general authority to settle her case, and had told him simply to "use his best judgment" in arriving at an appropriate settlement with Greyhound. Rippas also testified that he never communicated the specific settlement offers made by Greyhound to Lockette. Rippas told DeJean that he, Rippas, had general authority to settle Lockette's case, and DeJean began settlement negotiations with Greyhound. DeJean testified that he never communicated any specific settlement offers to Lockette.

The case was set for trial on May 19, 1986, and a pretrial conference was scheduled for May 7, 1986. On May 5, 1986, DeJean and Greyhound reached an agreement to settle Lockette's claims against Greyhound for $347,500. On that same evening, Rippas advised Lockette that the case had been settled. Both Lockette and Rippas testified that, after being advised by Rippas that he had settled her case, Lockette told Rippas that she would have to "talk to somebody" before accepting the settlement.[1] Despite Lockette's express

---

1. At oral argument, counsel for Greyhound suggested that the testimony of Rippas and Lockette conflicted on this point. Our examination of the record indicates otherwise. Lockette testified as follows:

    Q  Do you know when that conversation took place?
    A  May the 6th.
    Q  May the 6th? What did he tell you about a check?
    A  He told me who he was and asked me how I was doing. I told him I was feeling bad, you know, and I came to lie down on the sofa. And he had told me, he say I have

some wonderful news for you. He said, "I know you are going to be excited." He said, "I have a check for you." I said, "What?" He said, "I have a check for you." I say, "Not for me." He say, "It's for $347,000.00." So, he kept asking me, "Aren't you excited? Aren't you excited?" You know? And it took me a while to respond because it really shocked me and it really upset me, you know. And I told him wait minute. I said I have to talk to somebody about this. And by me being so upset and nervous, I dropped the phone. And that's when my friend picked it up

reservations concerning the settlement, it is undisputed that Rippas did not in any way communicate Lockette's reservations to DeJean. On May 6, 1986, Lockette made an appointment to see Daniel Guidry, her present attorney, on May 7, 1986. Lockette met with Guidry in his office on the morning of May 7, and explained to him that she was not happy with the settlement offer accepted by DeJean and Rippas.

At the same time that Lockette was consulting with Guidry, DeJean and Greyhound's counsel advised the district court at the pretrial conference that Lockette's case was settled. The court noted the settlement on the pretrial order and DeJean and counsel for Greyhound signed the pretrial order. Later that day, Guidry called DeJean and informed him that the settlement offer was unacceptable to Lockette.

After Greyhound's counsel was apprised of Lockette's rejection of the settlement, Greyhound filed a motion to enforce the settlement. With the consent of the parties, the case was referred to a federal magistrate for decision. On May 19, 1986, the magistrate held a hearing and subsequently denied Greyhound's motion to enforce the settlement. Greyhound filed a motion for a new trial, citing new evidence. The new evidence consisted of the testimony of Walter Rippas which contradicted an affidavit executed by Lockette stating that Rippas had not discussed Greyhound's settlement offer with Lockette prior to May 7, 1986. At a second hearing, the magistrate reconsidered her prior ruling on Greyhound's motion to enforce that settlement, and ordered its enforcement.

In her memorandum ruling enforcing the settlement, the magistrate held that (1) the contract between Lockette and Rippas which required written consent before the case was settled was not binding on Greyhound, as a third party, because the contract was not filed with the clerk of the district court; (2) the signed notation on the pretrial order that the case was settled met the writing requirement of Article 3071 of the Louisiana Civil Code; and (3) DeJean had authority to settle Lockette's case.

Lockette filed a timely notice of appeal to this court. On appeal, Lockette argues that (1) the magistrate erred in granting Greyhound's motion for a new trial on the basis of newly discovered evidence; (2) the alleged settlement agreement failed to meet the writing requirements of the Louisiana Civil Code; (3) neither DeJean nor Rippas possessed the authority to settle with Greyhound; and (4) to the extent that Rippas and DeJean had the authority to settle the case, such authority was revoked when Lockette informed Rippas at the time that Lockette learned of the settlement offer that she would have to speak with someone before accepting the settlement.

In response, Greyhound argues that (1) the magistrate properly treated Greyhound's motion for a new trial as a motion for rehearing, and the magistrate did not abuse her discretion in granting that motion; (2) the signed notation on the pretrial order satisfied the writing requirements of the Louisiana Civil Code; (3) Rippas and DeJean had express authority to settle Lockette's claims with Greyhound; and (4) Lockette is estopped from repudiating the settlement because she permitted Rippas to clothe DeJean with apparent authority to settle the case and cannot now claim that DeJean had no authority to accept a settle-

---

and I don't know what he was still saying after that.
Tr.Vol. IV at 15–16. *See also* Tr.Vol IV at 45 & 47. Rippas told a similar tale. He testified on direct examination as follows:

Q When you telephone Ms. Lockette on the night in which you conveyed that you had settled the case, did—was there a period when she dropped the telephone and did not come, return to answer it?
A No.
Q Did she tell you anything along the lines of I don't want this or I've got this—

A She said—she did—she said she was hoping for more, but that it wasn't a bad offer, but she wanted to check with a buddy or her friend first, before she made a decision, is what she said.
Tr.Vol. IV at 97–98. Hence, the testimony of both Rippas and Lockette was in agreement upon the fact that Lockette wanted to talk to someone else before accepting the settlement offer. The magistrate also reached this conclusion. Tr.Vol. II at 244. This finding is clearly not erroneous.

ment offer made by Greyhound in good faith.

Because we agree with Lockette's contention that whatever authority DeJean and Rippas had to settle her case was revoked when Lockette refused on May 5, 1986, to accept the settlement, we need only address that argument. We do, however, address Greyhound's arguments that Lockette gave Rippas and DeJean express authority to settle the case and Greyhound's argument that Lockette is estopped from repudiating the settlement agreement. Before addressing these arguments, we will consider the choice of substantive law to be applied to the enforceability of the settlement agreement and set out the appropriate standard of judicial review.

## II.

### A. Choice of Law

■ Under well-settled principles of law in this circuit, we hold that Louisiana law governs the construction and validity of the settlement agreement in this case. As this court has stated, "[a]lthough federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." *Lee v. Hunt*, 631 F.2d 1171, 1173–74 (5th Cir. Unit A 1980) (footnote omitted), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981). In this case, where jurisdiction is based upon diversity of citizenship, we will apply the substantive law of Louisiana to determine whether the settlement agreement allegedly entered into between Lockette and Greyhound is enforceable.

### B. Standard of Review

■ We next address the standard of review applicable to findings of fact and conclusions of law made by a federal magistrate trying a case with the consent of the parties pursuant to 28 U.S.C. § 636. In such a situation, the magistrate is, in effect, acting as a district judge and is empowered by statute to direct the entry of judgment. *Id.* § 636(c)(3). Appeal from a judgment entered by a magistrate with the consent of the parties is to the court of appeals, not to the district court. Hence, this court applies the same standard of review to the findings and conclusions of the magistrate that we would apply to a decision of the district court. Conclusions of law made by the magistrate are therefore subject to *de novo* review by this court while findings of fact made by the magistrate are upheld unless such findings are clearly erroneous. *See Fritiofson v. Alexander*, 772 F.2d 1225, 1239–40 (5th Cir. 1985); Fed.R.Civ.P. 52(a). With these principles in mind, we turn to the questions presented.

## III.

■ We turn first to the question of whether Rippas, and hence DeJean, had authority to settle Lockette's suit against Greyhound. The parties agree that under Louisiana law, "a party's counsel of record does not have authority to settle a client's claim without his client's 'clear and express consent.'" *Fredric Hayes, Inc. v. Rollins*, 435 So.2d 1151, 1152 (La.App. 3d Cir.1983). In her memorandum ruling, the magistrate found that Lockette gave express general authority to Rippas to settle her case, and that this authority was delegated with her knowledge and consent to DeJean. We will assume for the purposes of our analysis that this finding is not clearly erroneous, and that Lockette's statements to Rippas to the effect that he was authorized to use his best judgment in settling her case were sufficient under Louisiana law to constitute a grant of settlement authority.

We also stress for the purpose of our analysis that the parties are in agreement that no enforceable settlement was reached until DeJean and counsel for Greyhound announced at the pretrial conference that a settlement had been reached and signed the pretrial order containing the notation that the case had been settled. Indeed, Greyhound cannot allege that an enforceable settlement was reached before this time because of the requirement in Louisi-

ana law that a settlement agreement, to be enforceable, must "be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding." La.Civ.Code Ann. art. 3071 (West Supp.1987). Assuming that the signature of DeJean and Greyhound's attorney on the pretrial order was sufficient to meet the writing requirement of the Louisiana Civil Code, an issue we do not reach, no enforceable settlement agreement was reached on May 5, 1986, the date that DeJean and Greyhound agreed to settle the case for $347,500; instead, the earliest possible time that an enforceable settlement could arguably have been entered into was on May 7, 1986, the date of the pretrial conference. However, as the testimony of both Lockette and Rippas makes clear, Lockette had told Rippas prior to this time either that the $347,500 settlement offer was unacceptable or, viewing the testimony in the light most favorable to Greyhound, that she had to consult with someone else before accepting the settlement offer. At this point, whatever authority Rippas, and hence DeJean, possessed to settle Lockette's case was revoked, or at least modified to the extent that they had no authority to enter into a settlement for that particular figure prior to hearing further from Lockette. Hence, we hold that at the time that DeJean announced at the pretrial conference that the case was settled and signed the pretrial order, he had no authority to enter into that particular settlement agreement. We therefore hold that the settlement agreement is not binding on Lockette, and that the magistrate erred in reaching a contrary conclusion.

Our holding that DeJean had no authority to enter into the settlement agreement makes it unnecessary to address Lockette's other arguments for reversal. We turn, therefore, to Greyhound's arguments that DeJean's announcement at the pretrial conference that the case had been settled constituted a judicial admission that was binding on Lockette, and Greyhound's argument that Lockette is estopped to repudiate the settlement agreement.

Greyhound relies upon *Singleton v. Bunge Corp.*, 364 So.2d 1321 (La.App. 4th Cir.1978), for the proposition that DeJean's announcement at the pretrial conference constituted a judicial admission that bound Lockette to the settlement agreement. *Singleton*, however, is distinguishable from the case *sub judice*. In *Singleton*, the attorney representing the plaintiffs entered into a settlement agreement with the defendants which the plaintiffs subsequently refused to accept. The plaintiffs contended that they refused the settlement on the day before their attorney announced the settlement in open court. Their attorney, Mr. Rodriguez, claimed that the plaintiffs authorized him to settle for the amount offered and that he did not learn of their refusal to settle until after trial. The court declined to resolve this factual issue. The court stated:

> Ordinarily, a party's counsel of record is assumed to be authorized by his client to engage in settlement negotiations, but he does not have authority to settle his client's claim without his client's "clear and express consent." Nor, generally, can an attorney *sign* a binding settlement agreement on behalf of his client without a written authorization from the client. However, because a client speaks through his attorney in court, any statement made by the attorney is held to be an admission of the client. Under the provisions of C.C. Art. 2291, a judicial confession is full proof against the party making it. Thus, it would appear that the statement by Mr. Rodriguez, as the [plaintiff's] "special attorney in fact," in open court that [the plaintiffs] had agreed to settle the case for $21,683.50 is binding against them, since Bunge apparently did not learn until after trial that the [plaintiffs] refused to accept the settlement.

*Id.* at 1325 (citations and footnote omitted). We think that the result in *Singleton* would have been different had there been no dispute, as there is no dispute in this case, that the authority of the attorney of record to settle the case had been modified or revoked prior to his announcement of settlement in open court. We do not think

that the Louisiana courts would apply the doctrine of judicial admissions when its application would result in attorneys being able to settle their client's cases after the authority to do so has been removed by the client.

██ Furthermore, La.Civ.Code Ann. art. 1853 (West 1987) provides that a judicial confession "may be revoked only on the ground of error of fact." We think that the testimony of DeJean makes clear that, to the extent that his announcement of settlement constitutes a judicial confession, he made it under the mistaken belief that he had authority to settle the case. Tr.Vol. IV at 66. We think that this mistaken belief constitutes an error of fact sufficient to enable Lockette to revoke any judicial admission that DeJean might have made. Hence, we reject Greyhound's argument that DeJean's statement at the pretrial conference that the case was settled constitutes a binding judicial admission against Lockette.

Finally, we turn to Greyhound's argument that Lockette is estopped from repudiating the settlement agreement because she "shopped" attorneys, allowed Rippas to interpose himself between herself and DeJean, and otherwise acted to create a situation that was likely to result in error and confusion. The elements of estoppel are well-settled in Louisiana jurisprudence:

> Equitable estoppel, or "estoppel in pais," can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Thus, there are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance.

*Wilkinson v. Wilkinson,* 323 So.2d 120, 126 (La.1975); *see also Busby v. Parish Nat'l Bank,* 464 So.2d 374, 379 n. 5 (La. App. 1st Cir.) (stating elements of equitable estoppel), *writ denied,* 467 So.2d 1132 (La. 1985).

██ The requirements of equitable estoppel are not met in this case for several reasons. First, we find no evidence of misconduct on Lockette's part sufficient to enable Greyhound to invoke estoppel. Lockette told her attorney that she did not agree to the settlement, and we think that she should be able to expect that her attorney would convey this message to Greyhound. Second, to the extent that Greyhound's argument is predicated upon Lockette's interposition of Rippas between herself and DeJean, her attorney of record, we fail to see how the situation would have changed had Rippas been enrolled as counsel of record. Neither Rippas nor DeJean had authority to settle the case, and had Rippas, rather than DeJean, announced settlement and signed the pretrial order, the outcome of this case would have been no different. Third, we think that, prior to accepting the settlement, Lockette was free to obtain the opinion of other attorneys, and we refuse to enforce an estoppel based on the fact that Lockete "shopped" attorneys. Finally, even assuming that Greyhound can meet the first two elements of estoppel, Greyhound has shown no detrimental reliance upon the settlement. Greyhound makes no allegation that they changed their position in any way between the time that settlement was announced on May 7 and the time that Greyhound learned that Lockette had rejected the settlement, which could not have been more than one day, given that Greyhound filed its motion to enforce settlement on May 8. True, Greyhound had no settlement agreement, but Greyhound was not otherwise in a worse position. We accordingly reject Greyhound's arguments based on estoppel.

### IV.

For the above reasons, the judgment of the district court is REVERSED.