JjPEATROSS, J.
In this dispute over attorney fees under an alleged contingent fee contract, Defendant, Connie D. Cole, proceeding pro se in this appeal,, argues that insufficient, evidence existed to support the trial court’s decision to award Plaintiff, Culpepper & Carroll, PLLC, the sum of $6,950.01, plus legal interest, together with an additional 25 percent on principal and interest as attorney fees. For the following reasons, the judgment of the trial court is amended and, as amended, affirmed.

FACTS

On April 12, 2004, Culpepper & Carroll, PLLC (“Culpepper”), filed a petition on open account in Ruston City Court against Connie D. Cole (“Cole”) seeking $6,950.01, plus legal interest, together with an additional 25 percent on both the principal and interest as attorney fees. Attached to the petition were a November 12, 2003 demand letter and a November 3, 2003 invoice in the amount of $6,950.01 for attorney fees in connection with a matter entitled “Succession of Annie Ruth Brown.” The invoice indicated that the balance due was calculated by taking one-third of $21,600.03 ánd subtracting from it a $250 credit, representing advance court costs paid by Cole. Evidence adduced at the subsequent trial showed that the $21,600.03 represented the amount of a settlement that Culpepper had negotiated with opposing counsel in the succession matter in which Culpepper represented Cole. Thus, the $6,950.01 represented a fee Culpepper claimed had been earned pursuant to a contingent fee contract entered into between Culpepper and Cole.
li>Cole filed an answer stating that “Mr. Culpepper did this on a contingency fee basis,” that Culpepper “quit the case” and that Cole paid Culpepper for court costs, but Culpepper “would not go to court.” In a written explanation of his answer, Cole admitted that he consulted with Culpepper on the succession of Annie Ruth Brown, but Cole asserted that he refused any more consultation from Culpepper and pursued the case on his own behalf. He stated that the settlement amount that Culpepper had attempted to get Cole to accept left Cole “feeling as if his counsel was unfaithful and leaving him virtually unrepresented.” Cole attached to his answer a copy of a letter from Culpepper to Cole dated September 20, 2000. The letter indicated that Culpepper would handle Cole’s legal representation in the succession of Annie Ruth Brown on a contingent fee basis for “one-third of whatever additional property or money we can get for you.” The letter also acknowledged that Cole had already advanced $250 for estimated court costs. The letter then discussed legal issues that Culpepper considered pertinent in the matter, noted that the net value of the estate was $183,000 and indicated that Culpepper considered one-eighth of the estate, or $22,900, to be the maximum Cole could get if Cole could be considered a forced heir. Thus, Cul-pepper’s letter indicated to Cole that, since Cole already had received $2,500 in value, $20,400 would be the maximum amount Cole could expect to win in the case.
In addition, the letter indicated that Cul-pepper probably could get opposing counsel to recommend a settlement to his clients, although they ^obviously would not pay the entire amount because the law was unclear concerning forced heirship issues under the facts of this case.
When the matter came on for trial on July 14, 2004, counsel for Culpepper first called Cole as an adverse witness. Cole generally was unresponsive as a witness, but did make some critical admissions. Cole admitted that, under the “so-called” will, Cole would have received $2,500 in *343 land, and Cole remembered Culpepper “saying something about if I got a one-eighth interest, but you also told me I didn’t qualify for that.” Cole then was asked if his counsel had informed him that the estate was willing to pay Cole an additional $21,603 in real estate. Cole responded affirmatively, but stated that he was unsatisfied with that figure. Cole testified as follows regarding the contingent fee agreement:
Q: (by Culpepper) Okay, but when you came to see me, you didn’t have money to pay on an hourly basis. You wanted me to charge a contingent fee of one-third of whatever additional amount of money I could get the people to agree to pay you voluntarily or through court, did you not?
A: (Cole) On, on a — uh, we agreed on a contingence fee.
[[Image here]]
Cole was then asked if he had given counsel the authority “to go ahead and make the best settlement that we could” based upon counsel’s opinion that if the case went to trial, Cole would lose and would get no more money. Cole responded, “[tjhat’s based on your opinion, but on my opinion, I believe that, uh, I would get more.”
When asked if Cole had terminated his counsel’s services, Cole responded that he did not know, but that he had asked counsel “off of the |4case.” Cole also admitted reporting his counsel to the Bar Association after counsel “quit,” and that, after retaining new counsel, Cole eventually reported him to the Bar Association as well. Cole also admitted reporting the attorney representing the estate to the Bar Association.
Finally, when asked if he had received a certified letter demanding payment of the $6,950.01, Cole indicated that he received a certified letter, but stated, “I don’t exactly recall what was on the certified letter.... ”
The next witness was Bobby Culpepper of the plaintiff law firm. Culpepper indicated that Cole had first contacted his office in 2000 to complain about Cole’s mother’s will which had left him only $2,500. According to Culpepper, Cole felt that he should be a forced heir, and there was some discussion concerning whether the forced part would be one-eighth or less than one-eighth. Culpepper testified that he concluded Cole’s share probably would be less than one-eighth; but, if Cole received one-eighth of the estate, his share would have been $22,900, so that when the $2,500 was subtracted, Cole stood to get an additional $20,400. Culpepper testified that, after doing substantial research, he determined that Cole could not win. According to Culpepper, Cole “authorized me, at that time, to work out the best settlement that we could work out.”
Culpepper then negotiated a settlement in which Cole would get property worth an additional $21,600, which was more than Cole would get if he had been able to establish that he was a forced heir. Cul-pepper, however, testified that, when the time came to sign settlement papers, Cole would not sign. Culpepper then informed Cole that, because Culpepper did [¡¡not think Cole could win the case, Culpepper was not going to litigate something “that I felt could not be won and particularly when we were getting more than we would get if we won.” Culpepper then sent Cole certified demand letters seeking the $6,950.01 representing one-third of the additional value of the property which Cole would have received if he had accepted his counsel’s recommendation.
The court asked Mr. Culpepper if there was a written contract for the contingent fee agreement. Mr. Culpepper responded:
*344 We had a letter agreement, Your Honor. A letter dated September 20, 2000 is attached to his lawsuit. The first paragraph of that as per our agreement handles this matter on a contingency fee basis of one-third of whatever additional property or money we can get for you. And he was agreeable to that because he could not afford to pay on any hourly basis, so he- — and, in fact, in papers that are attached to his — to his answer, Your Honor, defendant’s answer, he said Mr. Culpepper did this on a contingency fee basis, so there’s no question about being an agreement. The, uh, disciplinary board found that there was a contingency fee contract.
When Mr. Cole took the stand on his own behalf, the court asked him if he had asked Mr. Culpepper for a contingent fee arrangement, to which Cole responded, “I asked for a contingency fee arrangement.” The court asked Cole if Mr. Culpepper had explained to him that he would “try to get whatever he could,” and whether he explained to Cole why Cole did not need to go to court in the case. Cole responded:
He told me, and I felt that, you know, we could go to court and I felt we could win if I had representation.
After hearing closing statements, the court concluded that the evidence showed a “contingency fee was present” based on the record, including attachments, letters, testimony in open court and the written | fiadmission in Cole’s answer that there was a contingent fee arrangement. The court noted that the “work was accomplished” and further noted that, according to the testimony, the results obtained would have been better than if the case had gone to trial on the issue of forced heirship.[1] Thus, the court was satisfied that the plaintiff had met the burden of proof. This appeal followed.

DISCUSSION

On appeal, Cole essentially challenges the sufficiency of the evidence, asserts that the court’s ruling did not allow Cole “the right to waive attorney,” and argues that he never gave Culpepper authority to settle. The totality of Cole’s argument in his appellate brief is contained in the following paragraph:
There has not been any evidence or law to support the finding of the City Court of Ruston. If there is any evidence or law to support the findings then we ask they are made available to the appellant Connie D. Cole and the Appeals Court. There has been a misconstruction of appellant, Connie D. Cole’s right to consult resulting in a denial of his right to waive which is what the case is about. The misconstruing is obvious as no written agreement or contract exists to substantiate this claim. This by an individual that makes his living drawing up contracts and agreements to specifics, attorney at law, Bobby L. Culpepper, appellee/plaintiff. The appellant, Connie Cole does not agree he ever at any time agreed that Mr. Cul-pepper could negotiate any amount and he would agree to pay for whatever settlement he had negotiated whether the appellant approved or not. The appellant has already pursued this case in two courts on his own initiative. This very ease in controversy is awaiting to be decided in the appeals court as well.

17Contingent Fee Agreement

The first issue we will address is whether the trial court correctly found a *345 contingent fee contract. The provisions of La. R.S. 37:218(A) state:
By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client’s domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.
The fifth circuit interpreted and applied the writing requirement of 37:218(A) in Tschirn v. Tschirn, 570 So.2d 204 (La.App. 5th Cir.1990), writ denied, 573 So.2d 1123 (La.1991), where there was an oral contingent fee contract, but no written contract. The court reasoned that the purpose of La. R.S. 37:218 is to protect the attorney, not to allow the client to deprive the attorney of his earned fee. The court concluded, therefore, that the absence of a written contingent fee contract does not necessarily render an otherwise binding oral contingent fee contract unenforceable and that the testimony of the attorney claiming the fees, plus general corroborating circumstances, are enough to prove that a contingent fee contract exists between the parties.
[sIn 1997, after the contingent fee agreement in Tschirn v. Tschirn, supra, was confected, an amendment to Rule 1.5(c) of the Rules of Professional Conduct became effective which added a provision regarding contingent fee contracts. Rule 1.5(c) now states, in pertinent part:
A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by Paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; the litigation and other expenses that are to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated.
In Tschirn v. Secor Bank, 96-1992 (La. App. 4th Cir.3/19/97), 691 So.2d 1290, writ denied, 97-1416 (La.9/19/97), 701 So.2d 172, the fourth circuit acknowledged this amendment to Rule 1.5. The court, however, found an oral contingent fee agreement to be binding based on the testimony of the attorney and the client that the parties had agreed on a fee of one-third of any recovery after a reduction of costs paid by the client.[2]
*346 In the case sub judies, we conclude that the sufficiency of the contingent fee agreement was admitted by Cole in three respects. First, Cole acquiesced in the contingent fee agreement through his silence upon receipt of Culpepper’s letter and his participation in Culpepper’s continued work on the matter. Cole attached to his answer a copy of the letter from Culpep-per setting forth the contingent fee of one-third “of whatever additional property or money we can get for you.” The letter further | flindicated that Cole would be responsible for paying all the court costs and had already advanced $250. Second, and as previously stated, Cole admitted in his written answer that Culpepper took the case on a contingent basis. Third, Cole testified in open court that he and Culpep-per had agreed that the fee would be determined on a contingent fee basis. In fact, during the trial, not only did Cole admit that he and Culpepper agreed to a contingent fee arrangement, but Cole stated that he asked Culpepper to take the case on contingency because he did not have the money to pay on an hourly basis. This testimony indicates that Cole was aware of the type of fee arrangement into which he was entering and understood how the fee would be determined and paid.
We consider the foregoing evidence sufficient to establish the existence of a binding oral contingent fee contract between Culpepper and Cole. See Tschirn v. Secor Bank, supra. Note that our finding herein is limited to the particular facts of this case, with the critical facts being Cole’s acquiescence in the agreement, his written admission of the agreement in his answer and, finally, his repeated admission in open court that Culpepper took the case on a contingent basis and that Cole, in fact, asked for a contingent fee arrangement with Culpepper. Accordingly, we find no merit in Cole’s allegation of insufficient evidence.
Next, we observe that, by enforcing the contingent fee contract, the court did not refuse to allow Cole “the right to waive attorney.” Cole had a right to discharge his attorney and to represent himself; however, Cole did not have the right to deprive his attorney of the contingent fee that his | inattorney already had earned pri- or to discharge. As noted, the evidence indicated that Culpepper already had negotiated a favorable settlement for Cole prior to Culpepper’s discharge, but Cole refused to sign the settlement agreement.
Finally, Cole argues on appeal that he never agreed that “Mr. Culpepper could negotiate any amount and [Cole] would agree to pay for whatever settlement [Cul-pepper] had negotiated whether [Cole] approved or not.” Louisiana law provides that a party’s counsel of record has authority to settle a client’s claim only with the client’s “clear and express consent” to do so. Frederic Hayes, Inc. v. Rollins, 435 So.2d 1151 (La.App. 3d Cir.1983). In Hayes, on a record “totally devoid of any evidence demonstrating that the defendant ever consented in any manner whatsoever to the settlement confected” by his counsel, the third circuit found no error in the trial court’s finding that there was no settlement of the defendant’s claim.
By way of contrast, in Lockette v. Greyhound Lines, Inc., 817 F.2d 1182 (5th Cir.1987), a Louisiana case, the plaintiffs counsel testified that the plaintiff had given him general authority to settle her case and had told him simply to “use his best judgment” in arriving at an appropriate settlement of her claim against Greyhound. Based on this testimony, the magistrate made the factual finding that express authority to settle the claim had been given. The Fifth Circuit did not disturb this finding, stating that the magistrate’s factual determination that the client had given *347 counsel the “express general authority” to settle was not clearly erroneous. The court in | ^Lockette further found that the plaintiffs statements to her counsel to the effect that he was authorized to use his best judgment in settling her case “were sufficient under Louisiana law to constitute a grant of settlement authority.” Lockette, supra.
Similar to Lockette, supra, in the case sub judice, Culpepper testified that Cole had authorized Culpepper “to work out the best settlement that we -could work out.” The trial court found this testimony credible and accepted the same and further noted that Culpepper then worked out a settlement and that Cole then refused to sign the settlement papers.[3] It is axiomatic that the trier of fact’s decision on such credibility issues is entitled to great deference and will not be disturbed absent manifest error; we detect no such error in the trial court’s decision. See Rosell v. ESCO, 549 So.2d 840 (La.1989).

Additional Attorney Fees Award

Although this suit was styled as a suit on an open account, and despite the fact that the judgment was apparently rendered on that basis, we note that counsel for Culpepper agreed during oral argument that the money owing in this case derives from a contractual obligation, i.e., a contingent fee contract, and is not, therefore, an open account as contemplated by La. R.S. 9:2781. For this reason, the judgment herein is amended to delete the award to Culpepper of 25 percent additional attorney fees plus costs under La. R.S. 9:2781(A).
| ^CONCLUSION
For the reasons set forth above, the judgment is hereby amended to delete that portion of the judgment awarding Culpep-per & Carroll, PLLC, additional attorney fees of 25 percent for pursuit of the alleged open account. As amended, the remainder of the judgment is affirmed. Costs of appeal are assessed to Defendant/Appellant, Connie D. Cole.
AMENDED AND, AS AMENDED, AFFIRMED.
CARAWAY, J., dissents with written reasons.

. See In re Succession of Annie Ruth Brown, 39,035 (La.App.2d Cir. 10/27/04), 886 So.2d 633, wherein a panel of this court affirmed the trial court’s determination that Cole failed to establish that the testator lacked testamentary capacity to execute her will.

. The court further held that, in cases where the contingent fee agreement is oral, any am'biguities in the agreement are to be construed against the attorney and in favor of the client.

. Although Cole has not attacked the adequacy of the settlement on appeal, we note, as did the trial court, that the agreement negotiated by Culpepper was more favorable than the amount Cole would have received under a judgment finding him to be a forced heir and, as such, entitled to one-eighth of the estate.