# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 16, 2011

No. 10-51197 c/w No. 11-50089
Summary Calendar

Lyle W. Cayce
Clerk

SYLVIA DEL BOSQUE,

Plaintiff - Appellant

v.

AT&T ADVERTISING, L.P., doing business as AT&T Advertising &
Publishing,

Defendant - Appellee

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:08-CV-402

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's consolidated order denying Sylvia Del Bosque's motion to revoke a settlement agreement she reached with AT&T Advertising, L.P. ("AT&T"), granting AT&T's motion to enforce that same agreement, and dismissing Del Bosque's discrimination suit against AT&T. Del Bosque argues that the district court erred in its resolution of the three motions,

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-51197 c/w No. 11-50089

contending primarily that she was coerced into signing the settlement agreement and lacked capacity to consent at the time she signed it. Our review of the record discloses no abuse of discretion on the district court's part, and we therefore AFFIRM.

## I.  Facts & Procedural History

Sylvia Del Bosque filed suit against AT&T in the United States District Court for the Western District of Texas in May of 2008. Del Bosque's complaint, as amended, alleged that AT&T discriminated against her in her employment on the basis of race and sex and retaliated against her after she formally complained to AT&T's human resources staff, both in violation of Title VII of the Civil Rights Act of 1964.[1]

The parties engaged in settlement discussions throughout the pretrial process, culminating in a mediation on November 18. The case did not settle on the day of mediation, but from November 18, 2010, until November 22, 2010, the parties continued efforts to attempt to resolve the case. Del Bosque was represented by counsel throughout this process. On November 22, 2010, Del Bosque and her attorney signed a settlement agreement after making certain handwritten changes on the face of the agreement that had been proposed by AT&T. On November 29, 2010, AT&T's attorney signed the agreement and initialed the changes Del Bosque had made.

On November 30, 2010, Del Bosque filed a pro se motion to revoke the settlement agreement. AT&T responded by filing motions with supporting affidavits to enforce the settlement agreement and to dismiss the case. Del Bosque filed a response without formal evidence. As required by *Mid-South*

---

[1] Del Bosque also asserted parallel state-law claims under the Texas Commission on Human Rights Act, apparently under pendent jurisdiction.

No. 10-51197 c/w No. 11-50089

*Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984),[2] the district court conducted a hearing on December 13, 2010, at which Del Bosque, the attorney who represented Del Bosque at the mediation, and AT&T's attorney spoke. No witnesses were presented, but it appears that the district court considered the attendees' statements as evidence; the affidavits and exhibits presented with the motion to enforce were also considered as evidence. The district judge carefully and diligently listened to both attorneys and Del Bosque. At the conclusion of the hearing, the district judge advised Del Bosque that he intended to enforce the settlement agreement and to deny her motion to revoke the agreement; the district court entered an order to that effect the same day but deferred dismissal of the case until AT&T had paid Del Bosque according to the terms of the settlement. Del Bosque filed a notice of appeal following the entry of this order. After AT&T satisfied the court that it had paid Del Bosque, the district court entered an order and final judgment dismissing the case with prejudice on December 30, 2010. Del Bosque then filed a second notice of appeal, and the two appeals were consolidated before us.

## II. Standard of Review

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). We review the district court's exercise of this inherent power for abuse of discretion. *See id.* at 450; *see also Deville v. United States*, 202 F. App'x 761, 762 (5th Cir. 2006) (unpublished) ("The ultimate decision to grant a motion to enforce a settlement agreement is reviewed for abuse of discretion."). "A district court abuses its discretion if it: (1)

---

[2] "Although a district court has inherent power to enforce an agreement to settle a case pending before it *summarily*, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement." *Mid-South Towing*, 733 F.2d at 390.

No. 10-51197 c/w No. 11-50089

relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 3180 (5th Cir. 2008) (en banc) (internal quotation marks omitted).

### III.  Discussion

Del Bosque's pro se appellate briefs raise a multiplicity of asserted errors in the district court's resolution of this case; however, most of her brief addresses the substantive merits of her case against AT&T, which is not before us.  We address only the issue of whether the district court erred in enforcing the settlement agreement.

As an initial matter, we conclude that the question of the enforceability of the settlement agreement is, under our precedent,[3] to be determined by reference to federal law, not—as AT&T would have us hold—Texas law.  *See Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981).  This principle is especially well-established in Title VII cases, inasmuch as "Congress has mandated a policy of encouraging voluntary settlement of Title VII claims." *Id.*  The presence of a choice-of-law provision in the settlement agreement itself logically cannot control our resolution of this question, inasmuch as the issue to be resolved is the validity of that very agreement; Del Bosque contends that the agreement—including the choice-of-law provision—is the product of incapacity or coercion.[4]  *See generally* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187

---

[3] We note that there is a circuit split on this question, but this circuit has not wavered from the position we adopted in *Fulgence.  See, e.g.*, *Makins v. District of Columbia*, 277 F.3d 544, 547 (D.C. Cir. 2002) (recognizing split and applying state law to determine whether enforceable settlement agreement existed in a Title VII case); Caleb Nelson, *The Persistence of General Law*, 106 COLUM. L. REV. 503, 526–30 (2006) (describing split).  We also note, however, that neither side has argued that this case would come out differently under federal law than under Texas law.  Accordingly, the conflict is a "false conflict." *See Kevin M. Ehringer Enters. v. McData Servs. Corp.*, No. 10-10198, 2011 U.S. App. LEXIS 14173, at *11 n.2 (5th Cir. July 11, 2011).

[4] The case that AT&T cites for the proposition that the choice-of-law provision governs, *Oliver v. Kroger Co.*, 872 F. Supp. 1545 (N.D. Tex. 1994), does not support that proposition.

cmt. b (1989) ("A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles.").

Under federal law, "'[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.'" *Mid-South Towing*, 733 F.2d at 392 (quoting *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630 (1948)). The burden, therefore, lay with Del Bosque to establish before the district court that there was some basis for holding the agreement invalid. As the district court concluded, she has not met this burden; indeed, she offered virtually no basis for the court to rule in her favor.

First, although Del Bosque initially suggested that she had not in fact signed the settlement agreement that AT&T presented to the district court, she admitted at the hearing that she had, in fact, signed the agreement.

Second, Del Bosque asserted that she had been coerced into signing the settlement agreement. When the court inquired as to how and why Del Bosque felt coerced, she first stated that she had had insufficient time to review the agreement despite having reviewed it over a weekend and having consulted with counsel before signing. On further questioning, Del Bosque asserted only that "everybody wanted it done" and then asked the court for a recess. She offered no other evidence of coercion or even statements that would show coercion. The

---

Rather, *Oliver* correctly states that, "[q]uestions regarding the enforceability of settlement agreements *in diversity cases* are governed by state law." *Id.* at 1547 (emphasis added); *see also Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) ("In this case, where jurisdiction is based upon diversity of citizenship, we will apply the substantive law of Louisiana to determine whether the settlement agreement allegedly entered into between Lockette and Greyhound is enforceable."). The federal courts' jurisdiction over this case is predicated on the presence of a federal question under Title VII, not diversity of citizenship.

No. 10-51197 c/w No. 11-50089

district court did not clearly err in finding that the facts did not support the defense of coercion. *See, e.g.*, RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS §§ 174 (invalidating assent when "physically compelled"), 175(1) (invalidating assent when "induced by an improper threat by the other party that leaves the victim no reasonable alternative"), 177 (invalidating assent procured through "undue influence by the other party") (1981).

Third, Del Bosque argues that she lacked capacity to enter into the settlement agreement. Del Bosque gave the district court a signed, unsworn letter from Holli Esteban (the "Esteban Letter"), a nurse at an endocrinology practice, addressed "To Whom It May Concern" and expressing the opinion that "[d]ue to Ms. Delbosque's [sic] recent worsening condition, she may not have been in the best medical condition to enter into a legal agreement." Although the district court reviewed and considered the Esteban Letter, Del Bosque affirmatively refused to allow the court to receive the letter into evidence—nor is it at all clear that the district court could have accepted the letter as evidence even if Del Bosque had offered it.[5] Even assuming arguendo that this Letter constituted medical evidence, it falls far short of proving "incapacity." Other than telling the court that she was "distraught" during the mediation, Del Bosque offered no other purported evidence to support her claim of incapacity. The district court's determination of the facts was not clearly erroneous, and the district court did not abuse its discretion in rejecting the defense of incapacity. *See, e.g.*, RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 12(2) (1981)

---

[5] Because the Esteban Letter was not received as evidence, it was not included in the district court's record; Del Bosque moves this court to supplement the record on appeal with the letter. Del Bosque also moves to supplement the record on appeal with other medical records and documents. Our review on appeal is necessarily limited to the record developed before the district court, *see Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009); Del Bosque cannot introduce new evidence before this court. Because the district court at least stated that it considered the Esteban Letter, we will GRANT the motion to supplement as to this letter only. Del Bosque's pending motions to supplement the record are DENIED in all other respects.

(limiting lack of capacity to extend only to persons who are under guardianship, minors, mentally ill, or intoxicated); *see generally Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969) (a person has "the mental capacity to contract if she appreciated the effect of what she was doing and understood the nature and consequences of her acts and the business she was transacting").

Instead of being a case about incapacity or duress, this seems to be a case where Del Bosque expected the mediation to give her a feeling of closure that she did not get. Del Bosque argued to the district court (and on appeal) that there was no "meeting of the minds" as to the settlement agreement. On further questioning from the district court, Del Bosque explained that the basis for her argument was that the mediation did not resolve, and the settlement agreement was not predicated upon, the full resolution of certain fact questions that Del Bosque had wanted the court to resolve when she filed the lawsuit. For example, it did not resolve whether the circumstances of her departure from AT&T constituted termination, retirement, or a disability release. However, she expressed no misunderstanding or mistake about the terms of the settlement agreement *itself*. Instead, at the hearing, Del Bosque confirmed that she understood the amount of money that she would receive under the agreement but nevertheless argued that the agreement was invalid because it did not explain how the agreement arrived at that amount.

Del Bosque appears to have been under the misimpression that reaching an agreement on stipulated facts was somehow a required precursor to the mediation process.[6] That is not so: as the district court explained, frequently the opposite is the case—a mediated agreement reaches an ultimate disposition that

---

[6] As Del Bosque told the district court at the hearing: "I was previously told when I was pro se to get with [AT&T's attorney] in regards to stipulated facts because, if we're mediating something, I think it's critical to know what we're mediating on and we have to agree on the facts."

fundamentally avoids the resolution of disputed facts. "[S]ettlement is a process of compromise in which, in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation, rather than an attempt to precisely delineate legal rights." *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982) (internal quotation marks and citations omitted). Ultimately, it seems that this misapprehension of the process, rather than any misunderstanding as to the terms of the agreement, drove Del Bosque's motion. A misunderstanding that does not "ha[ve] a material effect on the agreed exchange of performances" has no effect on the validity of the contract. RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS § 153 (1981); *see also id.* § 152 cmt. a ("Relief is only appropriate in situations where a mistake . . . has such a material effect on the agreed exchange of performances as to upset the very basis for the contract.").

Del Bosque was represented when she negotiated and entered into the agreement. To the extent that Del Bosque's argument is predicated on an alleged misunderstanding of the legal effect of the contract, the fact that she was represented by retained counsel seriously undercuts that position. *Cf. Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 606 (5th Cir. 1986) (noting, in a maritime case, that, "it is difficult to make out a claim of lack of understanding of rights or the consequences of releasing those rights" when a party "was represented by counsel of her own choosing," even if she also "allege[d] that she was misinformed, uninformed, confused, and had a lack of business understanding").

We therefore perceive no abuse of discretion in the district court's decision to enforce the settlement agreement on this record. The district court acted within its discretion in refusing to set aside a facially valid settlement agreement on the basis of the sparse evidence offered by Del Bosque in support of her motion. The district judge very patiently gave her every opportunity to

No. 10-51197 c/w No. 11-50089

say whatever she wished at the hearing—even granting her request for a recess to allow her to consider what she wanted to say. The court then issued a ruling well-grounded in the facts (and lack of facts) presented. No more was required.

AFFIRMED. MOTIONS GRANTED in part, DENIED in part.